## ELVIN E. GOIN v. ALEX PREMO.[1]

December 27, 1935.

No. 30,727.

*Samuel A. Anderson* and *John A. Burns,* for appellant.
*R. R. Barry,* for respondent.

JULIUS J. OLSON, JUSTICE.

Action was brought to recover compensatory and punitive damages for an alleged wilful, wanton, and malicious assault. The answer was a general denial and self-defense. Plaintiff recovered a verdict for "his damages at $2,000 and punitive damages in accordance with Minnesota statutes." The form of the verdict as to punitive damages, as explained by the trial judge in his memorandum, is that plaintiff's counsel in his closing argument had told the jury that the law permitted treble damages as punishment if the assault was wanton and malicious. The court denied defendant's motion for new trial upon condition that plaintiff remit any excess of the

[1]Reported in 264 N. W. 219.

$2,000 awarded.  Plaintiff accepted the condition so imposed.  Defendant appeals.

The errors assigned may be grouped:  (1) That the verdict is contrary to law and against the weight of the evidence; (2) that the damages awarded by the jury are so excessive as to indicate "passion or prejudice"; (3) that the verdict is so indefinite and uncertain as to be meaningless.

The record justifies the view that plaintiff has a sharp and venomous tongue easily moved into action by a quick-triggered temper.  Defendant possesses a heavy fist well supplied with muscular force behind it so as to make a blow therefrom a thing not easily to be forgotten.  The parties thus armed and the occasion being favorable to a clash between these forces, it is not surprising that in the encounter now to be related defendant's fist proved much more effective than plaintiff's vituperative tongue.

Plaintiff had been for a period of about one year defendant's tenant.  He was notified to vacate the rented premises by May 1, 1934.  Plaintiff's family, in obedience to such notice, began moving their belongings on April 30 but could not get into their new location until the afternoon of that day.  Defendant and his family began moving their things into this place the same day.  There was some confusion and consequent irritation.  Before plaintiff's family got out of the house defendant had taken down the lights in the living room.  Plaintiff came from his work shortly prior to six o'clock in the afternoon and was informed of the many difficulties his family had experienced.  He became decidedly upset.  His temper was aroused.  In this state of mind he made some rather uncomplimentary remarks to defendant.  They approached each other, neither being good natured—in fact quite the contrary.  Naturally there is some conflict in the testimony.  That was for the jury to determine, and counsel do not claim otherwise.  But as counsel are advocating their respective client's interests it is not surprising to find that each points to the other fellow as the aggressor and the one at fault.

For plaintiff it is claimed (the jury, as we have seen, found his version the more reliable) that he made no move to strike or to

engage in any physical encounter. He asserts that he was struck by defendant while turning his head to one side, not expecting anything in the way of physical assault. That defendant landed a telling blow, one that put plaintiff's verbal assault to rout, is adequately set forth in the testimony of Dr. Rogers, whose professional services were made a matter of immediate necessity. The doctor testified:

"He was bleeding quite profusely from the right side of his mouth, laceration of the inside of the mouth, the muscle was cut and it extended through the skin and he complained of severe pain in his back and was unable to stand, even at the time he was brought in, and he was placed on the table and this cut on the right side of his mouth was sewed up and following it he couldn't get off the table by himself, he just lay there because of the severe pain in his back."

There is other testimony amply sustaining plaintiff's claim.

After being taken to his home, where he was confined in bed until May 6, his back was X-rayed, and it was found that he had sustained a "compression fracture" of the first lumbar vertebra. "It was crushed to the front." His back was put in a cast, which be was compelled to wear until August 22. Then a brace was procured, and this he was wearing, at least part of the time, up to time of trial. His testimony is that he could do nothing involving physical exertion without it. The back injury is permanent, and he is not likely to be able ever again to engage in any work requiring substantial physical exertion.

Dr. Rogers testified that he attended plaintiff 68 times professionally since the accident and because thereof and that his services were reasonably worth $310. The cost of the brace and cast were $45. There were many X-ray pictures taken and some other incidental items of expense, including a week's hospitalization and the services of an additional doctor, so that plaintiff's actual expense, aside from loss of time, exceeded $400.

The verdict for compensatory damages "and punitive damages in accordance with Minnesota statutes" indicates that the jury was

in doubt as to what sum should be allowed as punitive damages. The judge in his memorandum states: "Counsel in his argument to the jury in behalf of the plaintiff stated that the law, and it is the recollection of the court that it was stated that the statute, provided for treble damages in a case of this nature as punishment." The judge of course did not state this to be the law. The court submitted the customary instructions respecting punitive damages. The evidence in the case made that a proper jury issue. That the jury intended to include punitive damages is clear. The court, however, thought the verdict should be only $2,000 and that this sum should not "be disturbed" as compensatory damages. We think the evidence sustains the trial court's conclusion. Defendant's "liability extends to all consequences which flow in unbroken sequence from the wrongful act until they become too remote, regardless of whether they may be deemed probable or not, or whether they might have been foreseen or not. The test of the extent of liability is in causation and not in probability or foreseeability." 2 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 2570, and cases under note 88. Expenses of medical treatment are proper items to be considered in assessing compensatory damages. *Id.* § 2572, and cases cited in notes.

The quoted part of the verdict, above referred to, is claimed by defendant conclusively to show that the jury was motivated by passion and prejudice, hence that there should be a new trial. Undoubtedly the jury thought the assault wholly without justification or excuse. There is room for that conclusion. We should not set aside a verdict for purely compensatory damages because the jury thought punitive damages should also be assessed. In Olson v. Myrland, 195 Minn. 626, 264 N. W. 129, 133, we said:

"We should not sacrifice rights upon the altar of mere formalism, nor should rules of procedure be so used as to thwart or destroy the accomplishment of justice. And we are required by statutory enactment to 'disregard all errors or defects in the pleadings and proceedings which do not affect the substantial rights of the adverse party, and no judgment shall be reversed or affected by reason there-

of.' 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 424; 2 Mason Minn. St. 1927, § 9285. Of interest here is Dean Wigmore's article 'Reversible Error,' appearing in 19 Journal of Am. Judicature Society, 28 (June, 1935), reprinted in Case and Comment, Vol. 41, No. 3, pp. 2, 3."

The conduct of the trial and the charge of the court are not challenged. The verdict has the approval of the trial court. Under these circumstances we believe that the errors assigned under the first and second groups are without substantial merit.

Nor do we think the verdict so doubtful of meaning as to render the result of the trial nugatory. The punitive damages are out of the case (except that on the argument of "passion and prejudice" the abortive attempt to award them required consideration. It has been considered in that connection). If as defendant claims this part of the verdict was "meaningless," the result is now made harmless. Fact issues only were involved. The triers of fact have determined them. It is not our business to interfere.

Order affirmed.