MARTIN OLSON v. R. O. MYRLAND AND ANOTHER.[1]

December 13, 1935.

No. 30,512.

[1]Reported in 264 N. W. 129.

*Nelson, Palmer & Moses,* for appellant.

*Chester L. Nichols* and *Carsten L. Jacobson,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff and defendant R. O. Myrland are brothers, and defendant Reuben is the latter's son. The difference in names comes about by reason of the fact that plaintiff did not adopt the farm name Myrland after coming to this country from Norway. Only the first named defendant was served with summons, defendant Reuben being a resident of Iowa and as such not subject to the jurisdiction of our courts. Hereafter we shall refer to the parties as plaintiff and defendant.

Plaintiff brought this action to recover upon three promissory notes executed by both defendants and payable to plaintiff in the total sum of $2,500, each bearing interest at the rate of six per cent per annum. Plaintiff had a verdict below for the face amount of the notes, the jury having omitted interest in its verdict. Defendant moved in the alternative for judgment notwithstanding or a new trial. Plaintiff moved for an order of the court correcting the verdict by adding thereto the omitted interest. The court granted plaintiff's motion but denied that of defendant, and this appeal followed.

Defendant's answer admitted his execution of the notes, averred that he never received any part of the consideration for the same, alleged that he never made any payments upon any of them, and that any payments made were without his procurement or consent. His defense is that the causes of action did not accrue within the statutory period of six years next prior to the commencement of the

action. In his reply plaintiff alleged "that on or about the 29th day of December, 1932, the defendant, R. O. Myrland, in writing, acknowledged the indebtedness upon which suit is brought in the complaint herein, and promised to pay said indebtedness." Upon the issues thus framed the parties went to trial, with the result hereinbefore noted.

Plaintiff testified that the consideration for the $1,500 note was in fact turned over to defendant. The consideration for the two $500 notes undoubtedly went to Reuben; and it is also fairly to be inferred from the record that all of the money represented by these notes actually went to Reuben, defendant being only the transmitter of the fund. Reuben paid interest upon the notes up to and including 1930. At the time of trial it was agreed that interest should be computed only from January 1, 1931, to the date of verdict.

The case hinges upon a letter written by defendant to plaintiff, referred to in the evidence as plaintiff's exhibit F. Defendant denied writing this letter, and there was testimony introduced at the trial on the part of an alleged expert that the letter was not genuine. The jury found otherwise, and the verdict has the approval of the trial court. An examination of the record convinces us that the evidence amply sustains this finding. The letter as far as here material reads as follows:

"Brother Martin: I have received letter from my son, Reuben. He told [me] that you wish to receive a new note and I have promised to sign them again for one year. At that time they shall be paid even if I have to pay them myself."

The letter then proceeds with other matters not important here, reference being had therein to a trip that defendant had recently made to the country of his nativity, Norway. There is a further suggestion that plaintiff "Be kind enough to come over to me next Saturday. Take then the note with you. * * *" Plaintiff testified that he went to call at his brother's house shortly after receipt of this letter, but no one came to the door, so, being of opinion that he was not wanted, went away.

This is the letter upon which plaintiff relies to avoid the operation of the statute of limitations. The court instructed the jury that as a matter of law the payments made could not be considered by them as payments coming from or authorized by defendant. The sole question left with the jury for determination was whether the letter was a sufficient acknowledgment, in view of the facts and circumstances appearing at the trial, to toll the statute. The jury were also instructed, in a special interrogatory submitted, that they first determine whether the letter was in fact genuine. If this letter did not bear the genuine signature of defendant, so the jury were told, they need go no further.

The jury returned a sealed verdict and came into court the next morning. At that time the envelope containing the verdict was opened in their presence, and the court observed that the special interrogatory had not been answered. The judge asked whether this was an oversight and was informed by the foreman that it was, stating that the jury intended to answer the interrogatory in the affirmative. Thereupon the foreman stepped forward and signed the special verdict and inserted the affirmative answer "yes" to the special interrogatory, that is to say, the jury found the exhibit genuine. The general verdict did not include interest. Upon inquiry by the judge it was learned that the jury thought interest should not be included; hence the same was not computed and added to the principal sum.

We shall take up and consider the various assignments of error under four subdivisions.

1. Is exhibit F sufficient in form and substance to permit the finders of fact to say that the statute of limitations has been tolled? As far as here material the statute reads, 2 Mason Minn. St. 1927, § 9204:

"No *acknowledgment* or *promise* shall be evidence of *a new* or *continuing contract* sufficient to take the case out of the operation of this chapter, unless the same is contained in some writing signed by the party to be charged thereby." (Italics ours.)

In Russell & Co. v. Davis, 51 Minn. 482, 53 N. W. 766, 767, the writing upon which reliance was placed read: "This note and the

one attached to it are all right, and I think I can pay one hundred dollars on them, any way, next fall." The court in construing this language said (51 Minn. 483, 484) :

"Of course, the willingness to pay need not be express, but is implied from the unqualified and unconditional acknowledgment of the debt. Moreover, the acknowledgment must be an admission, not that the debt was just originally, but that it continues due at the time of the acknowledgment. * * * But, even tested by these strict rules, we think the acknowledgment in this case was sufficient. It would be a very strained and unreasonable construction to hold that an acknowledgment that the notes 'are all right' meant simply that they were genuine and originally constituted a just debt. Even if it stood alone, this could hardly, by any reasonable intendment, be construed as meaning anything but that the notes *then* constituted a valid debt."

Comparing the language used in the instant case, "I have promised to sign them [the notes] again for one year. At that time they shall be paid even if I have to pay them myself," with that used in the cited case, we find here just as definite acknowledgment and recognition of the debt as that found adequate in the former case. And, what is more important, we have defendant's promise "at that time [at the end of the year] they shall be paid even if I have to pay them myself." By no stretch of the imagination can anyone be misled as to what the writer intended to say. By this writing defendant not only acknowledged the validity of the debt represented by the then existing notes but further agreed that they should be paid even if he had to do so himself. In fact, that was all he promised when he executed the notes.

The trial court excluded all conversations had between the parties prior to March 21, 1927, being of the view that such conversations could not be considered by the jury in determining whether interest payments made by Reuben were with the knowledge, consent, or procurement of defendant. Testimony was permitted respecting conversations subsequently had between the parties. It is interesting to note that in the late fall prior to the time the letter was

written, while defendant was visiting at plaintiff's home, these notes were mentioned and discussed. Plaintiff and his wife insisted that something must be done in the way of payment. Defendant became angry and left the house in that state of mind. But shortly thereafter he wrote this letter, exhibit F. In it he referred to the incident just mentioned. He used therein this significant language:

"If it had been as it was when we were good friends, then we would have comfort and pleasure of meeting each other in a good and Christian way. Now it is different. When I was shown out of your house, then I cannot  *  *  *  for that reason  *  *  * see you, even if I had great desire so to do many times."

There were other subsequent conversations had between the parties wherein defendant, according to plaintiff's testimony and that of his witnesses, orally acknowledged the indebtedness and knew that interest payments were being made by the son. But all these conversations aside, we think the letter is sufficient as an acknowledgment of the debt to take the case out of the statute.

The court in submitting this question to the jury said:

"I shall instruct you that the letter does not contain what in law is a sufficient new promise to pay this debt. The reason for that I don't think I need explain in detail. I think it is a question for the court to that extent." And further:  " 'It is not sufficient to take the case out of the act'—that is, the statute of limitations— 'that the claim should be proved or be acknowledged to have been originally just.  *  *  *  The acknowledgment must go to the fact that it is still due and of course due from the person who makes the acknowledgment, not due from somebody else.' " Also:  " 'There must either be an express promise or an acknowledgment expressed in such words and attended by such circumstances as to give to it the meaning, and therefore the force and effect, of a new promise and, in the case of an acknowledgment or implied promise, there should be a direct recognition of the indebtedness sued on from which a willingness to pay the same may be reasonably implied.' "

There can be no doubt that in substance and effect the charge of the court was as favorable to defendant as the law permits. As

632

long ago as Smith v. Moulton, 12 Minn. 229 (352), it was held, p. 231:

"It is not necessary for us to determine whether, on principle, if this were a new question, a debt on which a remedy is lost by lapse of time should be held a sufficient consideration to support a new agreement or promise, or whether the mere acknowledgment of such debt should be considered evidence of a promise to pay, as the authorities nearly unanimously answer both questions in the affirmative, and our statute sanctions this view."

See also 37 C. J. p. 1256, [§ 787] 5, and cases cited under notes.

2. Defendant claims that the court erred in admitting in evidence the letter, exhibit F, because not specially pleaded. Technically speaking, there is justification for criticism. The reply alleged a written promise as of December 29, 1932. The letter was dated in 1928. However, it is obvious that defendant was not misled or prejudiced. The case had been tried before, and this letter was well known to both parties. As a matter of fact, the handwriting expert, testifying for defendant, said that he had examined this letter, including photographic copies of the same, several months before the present case was heard. The principal point made by defendant at the trial was that this particular letter was in fact a forgery. To that the greater part of defendant's case was devoted. That being so, it is a purely technical objection that is now being raised. Of course, plaintiff could and probably should have moved to amend the pleadings. As a matter of course the trial court would have granted the same. Under these circumstances we are not disposed to disturb the result. After all, pleadings are but a means to an end, not the end itself. Defects in pleadings, not challenged before or during the trial by demurrer, motion, or specific objection, should not work a reversal where the cause of action or defense has been litigated on the merits as if no defects in pleadings existed. 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 7675. Defendant's objection at the trial was that the exhibit should not be admitted because "incompetent, irrelevant and immaterial; not within the issues; not within the pleadings,

without foundation, and is not a sufficient promise to take the case out of the statute of limitations." These broadside objections should not be favored especially where, as here, it is obvious that no harm did or could result. We should not sacrifice rights upon the altar of mere formalism, nor should rules of procedure be so used as to thwart or destroy the accomplishment of justice. And we are required by statutory enactment to "disregard all errors or defects in the pleadings and proceedings which do not affect the substantial rights of the adverse party, and no judgment shall be reversed or affected by reason thereof." 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 424; 2 Mason Minn. St. 1927, § 9285. Of interest here is Dean Wigmore's article "Reversible Error," appearing in 19 Journal of Am. Judicature Society, 28 (June, 1935), reprinted in Case and Comment, Vol. 41, No. 3, pp. 2, 3.

3. The next error urged relates to the court's manner of handling the situation when the jury brought in the general verdict and its disposition of the special verdict. With reference to the special verdict, it seems to us that the court was amply authorized under 2 Mason Minn. St. 1927, § 9300, to have the same completed. That section reads:

"If the verdict be defective in form or insufficient, it may be corrected under the advice of the court, or the jury may be again sent out."

It appears here that when the conversation took place between the court and the foreman of the jury no objection was made by anyone to the methods adopted by the court. The jury were asked if this in fact was their verdict, and they answered "yes." To have sent the jury out of the room obviously would be a mere waste of time, an idle gesture. In Loudy v. Clarke, 45 Minn. 477, 48 N. W. 25, it was held that a sealed verdict is subject to correction by the jury before the verdict is recorded. That is all that was done in the instant case. Also to be noted is the fact that the special verdict is in conformity with the general verdict. They had been told that unless they answered the special interrogatory in the affirmative they should not find for plaintiff. Plaintiff's case hinged upon the genuineness of this letter.

4. It is next urged that the verdict is perverse because the jury expressed at the time of the conversation hereinbefore noted that interest was not intended to be given plaintiff. A sufficient answer thereto is the trial court's memorandum, which reads:

"The only question presented by the motions concerning which I have been in serious doubt is whether the general verdict should be regarded as perverse and therefore invalid.

"The affidavit of Mr. Swenson, clerk of my court, correctly states the facts as they occurred when the jury came in with a sealed verdict. They had reached an agreement late the night before and had been permitted by the bailiff to disperse and bring in a sealed verdict the following morning. This was with my consent. When I observed that interest had been omitted, I supposed this was through inadvertence; but in answer to my question the foreman said it·was intentional. I was then of the opinion that since the jury had separated I could not send them back to correct the verdict, and so I received it.

"When the jury answered 'yes' to the special interrogatory submitted to them they found that defendant R. O. Myrland wrote Exhibit F. When they returned a verdict for the principal of the debt sued on they found, under the instructions of the court, that Exhibit F contained such an acknowledgment of the debt as to toll the statute of limitations. These findings ·were a complete discharge of their duty as a fact finding arm of the court; reckoning interest was a mere clerical process, and followed as of course from a finding that the principal was due and payable. I have concluded that the fact that they *intended* to omit interest is of no significance. On what ground they conceived this intention one can only speculate. It was an unwarranted and futile intention and I am now of the opinion that I might (and probably ought to) have instructed them to correct the verdict in open court. Since I did not do so, it is my duty to correct it myself.

"(See Newberg v. Conley, 190 Minn. 459 [252 N. W. 221]; also the elaborate note in 66 A. L. R. p. 536, which discusses several matters which I think are of interest in this case."

Further comment is unnecessary. The learned trial judge has adequately stated all that need be said.

The order denying defendant's alternative motion is affirmed.

STONE, JUSTICE (concurring).

I concur fully all along the line except that I think the letter dealt with in the opinion should be held, as matter of law, a new promise adequate to take the case out of the statute of limitations. Defendant refers to plaintiff's "wish to receive a new note" and goes on to say, "I have promised to sign them again for one year. At that time they shall be paid even if I have to pay them myself." I fail to see how that language can be considered anything less than an unequivocal acknowledgment of the present binding character of the debt, as well as an equally unequivocal promise to pay at the maturity of the new note.

