## H. A. ALBACHTEN v. EDWARD L. BRADLEY.[1]

May 8, 1942.

No. 33,102.

*Holmes, Mayall, Reavill & Neimeyer,* for appellant.
*Courtney & Courtney,* for respondent.

PETERSON, JUSTICE.

Plaintiff as the payee sues defendant as the maker of a promissory note for $8,000 dated August 22, 1932, and payable one year after date. Action was commenced on January 10, 1941, more than seven years after maturity of the note.

The defense was that the action was barred by the statute of limitations, Mason St. 1927, § 9191(1), upon the ground that the

[1]Reported in 3 N. W. (2d) 783.

action was not commenced within six years after the cause of action accrued.

Plaintiff sought to avoid the bar of the statute by an agreement of the parties extending the time of payment and by an estoppel on the part of defendant to set up the statute of limitations as a defense.

The evidence is conflicting, but, since the court below directed a verdict against plaintiff, we shall state the facts favorable to him which, if they had been so found, are sustained by the evidence.

For some time prior to August 22, 1939, the date when the bar of the statute otherwise would have become effective, plaintiff pressed defendant for payment. The Northern National Bank, with which plaintiff had pledged the note and certain collateral belonging to his wife and his father, was threatening to sell the collateral under foreclosure of the pledge. Defendant requested plaintiff to wait until Thanksgiving time, which was about three months after the statutory period of limitation would have run, and promised that he would then make a new arrangement or settle plaintiff's claim. Among other things, defendant told plaintiff that it was unnecessary for him to commence an action to enforce payment; that defendant expected to procure a return of his collateral from his bank about Thanksgiving time; that then plaintiff would be his only creditor; and that plaintiff would not lose anything by waiting. Plaintiff requested defendant to call on a Mr. Castle, an officer of the Northern National Bank, to inform him of their arrangement and to induce the bank to forbear from selling the collateral which was pledged to secure his loan. Thereupon plaintiff agreed to wait until Thanksgiving time as requested.

Defendant called on Mr. Castle, who testified that he inquired of defendant whether he was going to do anything about his obligation to plaintiff; that defendant asked the bank to forbear with respect to plaintiff's loan until after Thanksgiving day; and that defendant stated that at the expiration of the time mentioned "he would clarify his obligation" with plaintiff.

Plaintiff relied on defendant's promises and representations and performed his part of the agreement by waiting until after Thanksgiving day before he again pressed defendant for payment. When plaintiff then called on him, defendant's attitude had changed. He no longer entreated and requested forbearance. On the contrary, he laughed at plaintiff and told him that he had made arrangements so plaintiff could not collect a cent; that he and his wife had changed their wills so that the entire estate would go to their children and that plaintiff should "try and collect it." That is precisely what plaintiff did by bringing the present action.

There was some considerable confusion in the testimony as to whether or not plaintiff had been informed that all of the defendant's collateral had been sold before the agreement in question was made. We think that the reasonable construction of plaintiff's testimony is that he knew that some, but not all, of defendant's collateral had been sold under the pledge by his bank.

Defendant contended that the contract in question was void and of no effect under Mason St. 1927, § 9204, because it was not in writing and that no estoppel could be predicated thereon.

At the close of the testimony the court below granted defendant's motion for a directed verdict upon the ground that the action was barred by the statute of limitations and that the agreement extending the time for payment or settlement was void under § 9204 and that no estoppel could be predicated thereon.

Subsequently, the court granted plaintiff's motion for a new trial exclusively upon error of law occurring at the trial in holding that the evidence did not sustain a finding of estoppel on the part of defendant to set up the statute of limitations as a defense. In its order the court said that "the testimony of the plaintiff's witnesses, if believed by the jury, would be sufficient to establish such an estoppel."

Defendant appeals from the order granting a new trial.

At the outset we deem it pertinent to say that the agreement to wait until after Thanksgiving day to make a new arrangement or settlement of plaintiff's claim clearly implied that plaintiff

would not commence suit before that time. Likewise, it is not important that there was no express mention of the statute of limitations. McLearn v. Hill, 276 Mass. 519, 177 N. E. 617, 77 A. L. R. 1039. *Cf.* Russell & Co. v. Davis, 51 Minn. 482, 53 N. W. 766. The assurance that plaintiff would not lose anything by waiting was in effect an agreement that the statute of limitations would not be asserted as a defense by defendant. Webber v. President of Williams College, 23 Pick. (Mass.) 302, *per* Shaw, C. J. See Miles v. Bank of America Nat. T. & S. Assn. 17 Cal. App. (2d) 389, pp. 397-398, 62 P. (2d) 177; Quanchi v. Ben Lomond Wine Co. 17 Cal. App. 565, 120 P. 427.

The question for decision is whether or not a party may be estopped to set up the statute of limitations as a defense by his oral agreement required to be in writing by Mason St. 1927, § 9204, where the other party in reliance thereon has performed and changed his position to his prejudice. Section 9204 reads:

"No acknowledgment or promise shall be evidence of a new or continuing contract sufficient to take the case out of the operation of this chapter, unless the same is contained in some writing signed by the party to be charged thereby; but this section shall not alter the effect of a payment of principal or interest."

An equitable estoppel is the effect of voluntary conduct whereby a party is precluded from asserting rights of property, contract, or remedy which he might otherwise have as against a person, who in good faith has relied on such conduct and has been led thereby to change his position for the worse with respect to his rights concerning the matter to which such conduct relates. Because it protects the blameless and is a powerful means for the accomplishment of justice, equitable estoppel is a favorite of the law. Dimond v. Manheim, 61 Minn. 178, 63 N. W. 495. The basis of estoppel is fraud. Some courts hold that an estoppel, like deceit, must be based on a misrepresentation of a past or present fact and that there can be no estoppel based on a promise of future performance. We do not follow that rule. Estoppel may be promis-

sory. An estoppel may be predicated on a promise of future action relating to the intended abandonment of existing rights. Thom v. Thom, 208 Minn. 461, 294 N. W. 461; In re Estate of Stack, 164 Minn. 57, 204 N. W. 546; 19 Am. Jur., Estoppel, § 53.

An estoppel may be based on an oral promise of the purchaser at a mortgage foreclosure or judicial sale that he will not insist on the statutory period of redemption. Ellingson v. State Bank, 182 Minn. 510, 512, 234 N. W. 867, 868; Tice v. Russell, 43 Minn. 66, 44 N. W. 886. In the Ellingson case we said: "The strongest equitable principle which gives relief is that the debtor is lulled into a false security to his prejudice." In Schroeder v. Young, 161 U. S. 334, 344, 16 S. Ct. 512, 516, 40 L. ed. 721, where property was sold on execution sale and the debtor failed to redeem within the statutory period because of the judgment creditor's oral promises that he would not insist upon the statutory time for redemption, the court said:

"Under such circumstances the courts have held with great unanimity that the purchaser is estopped to insist upon the statutory period, notwithstanding the assurances were not in writing and were made without consideration, upon the ground that the debtor was lulled into a false security."

Our decisions that an estoppel may be based on an oral promise by the purchaser at a mortgage foreclosure sale rest upon the same principles as those that an estoppel may be based on an oral promise not to set up the statute of limitations as a defense. Indeed, promises not to plead the statute of limitations and not to insist on the statutory period for redemption from a judicial or foreclosure sale are treated as controlled by the same equitable principles for the purpose of raising a promissory estoppel with respect to intended abandonment of existing rights. In 1 Williston, Contracts (Rev. ed.) § 139, the learned author says:

"Promises of future action, it is generally held, if they can furnish the basis for an estoppel at all, can do so only where they relate to an intended abandonment of an existing right, and are

made to influence others who in fact are induced thereby to act or to forbear. The commonest illustration of this doctrine is where one who has induced his creditor to forbear to bring action upon an enforceable claim by promise of payment or by a promise not to plead the Statute of Limitations as a defense, even though such forbearance was not requested as consideration for the promise, *and though the new promise (because not in writing or for other reasons) was not binding as such,* has not been allowed later to set up the Statute after the creditor relying upon the debtor's promise has refrained from bringing action until the statutory period has expired. Another illustration is where a statutory period for the redemption of property sold by judicial process has been allowed to expire on the faith of statements made by the purchaser that the statutory limitation would not be insisted upon: 'Under such circumstances the courts have held with great unanimity that the purchaser is estopped to insist upon the statutory period, not-withstanding the assurances were not in writing and were made without consideration, upon the ground that the debtor was lulled into a false security.' *The law is clear that in any case where a party to a contract agrees to give up a possible further defense or foregoes the advantage of a condition provided for his benefit in an existing contract, the promise is binding if the promisee relying thereon changes his position."* (Italics supplied.)

The great weight of authority, which we deem amply supported by sound reason, supports the rule that an oral agreement or promise not to take advantage of the statute of limitations, made before the cause of action is barred, upon which the creditor relies and upon the strength of which he refrains from commencing suit during the statutory period, estops the debtor to plead the statute as a defense. Howard v̇. Howe (7 Cir.) 61 F. (2d) 577; Baker-Matthews Mfg. Co. v. Grayling Lbr. Co. 134 Ark. 351, 203 S. W. 1021; Langdon v. Langdon, 47 Cal. App. (2d) 28, 117 P. (2d) 371; Adams v. California Mut. B. & L. Assn. 18 Cal. (2d) 487, 116 P. (2d) 75; Holman v. Omaha & C. B. Ry. & Bridge Co. 117 Iowa, 268, 90 N. W. 833, 62 L. R. A. 395, 94 A. S. R. 293; Chesapeake &

N. Ry. Co. v. Speakman, 114 Ky. 628, 71 S. W. 633, 63 L. R. A. 193; McLearn v. Hill, 276 Mass. 519, 177 N. E. 617, 77 A. L. R. 1039, *supra;* Branner v. Klaber, 330 Mo. 306, 49 S. W. (2d) 169; Howard v. West Jersey & Seashore R. Co. 102 N. J. Eq. 517, 141 A. 755, affirmed, 104 N. J. Eq. 201, 144 A. 919; State ex rel. Oliver v. U. S. F. & G. Co. 176 N. C. 598, 97 S. E. 490; McCampbell v. Southard, 62 Ohio App. 339, 23 N. E. (2d) 954; Empire Gas & Fuel Co. v. Lindersmith, 131 Okl. 183, 268 P. 218; Estate of Mohr, 212 Wis. 198, 248 N. W. 143, 249 N. W. 517; Annotations: 130 A. L. R. 26; 120 A. L. R. 770; 63 L. R. A. 195; 34 Am. Jur., Limitations of Actions, § 414; 37 C. J. p. 725. 1 Wood, Limitations (4 ed.) § 53c, p. 180, says in support of the rule:

"An estoppel to plead the statute of limitations can only be founded on conduct naturally calculated to induce plaintiff into a belief that his claim would be adjusted if he did not sue."

"It is enough if the party has been induced to *refrain* from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss." 2 Pomeroy, Equity Juris. (4 ed.) § 812, quoted in Calistoga Nat. Bank v. Calistoga Vineyard Co. 7 Cal. App. (2d) 65, 73, 46 P. (2d) 246.

The objection that an estoppel may not operate to create rights which under the statute can be created only by an instrument in writing signed by the party chargeable is of no avail. Our decisions have settled the rule contrary to the objection. Estoppel may preclude a party from asserting the lack of a writing required by statute. In Dimond v. Manheim, 61 Minn. 178, 181, 63 N. W. 495, 497, *supra,* Mr. Justice Mitchell said:

"While at one time the courts hesitated to apply the doctrine so as to give or divest an estate or interest in land, as being opposed to the letter of the statute of frauds, yet it is now well settled that a person may by his conduct estop himself from asserting his title to real property, as well as to personalty."

The overwhelming weight of authority supports this view. Kirk v. Hamilton, 102 U. S. 68, 26 L. ed. 79; 19 Am. Jur., Estoppel, § 92. The plain reason is that in such cases it is not solely a matter of enforcing an oral promise; but of giving effect to the equities created by the conduct of the parties. The oral contract is important only as a measure of the equities which the parties have created by their conduct. Schaefer v. Thoeny, 199 Minn. 610, 273 N. W. 190; Svanburg v. Fosseen, 75 Minn. 350, 78 N. W. 4, 43 L. R. A. 427, 74 A. S. R. 490; Brown v. Hoag, 35 Minn. 373, 29 N. W. 135. That the granting of equitable relief involves something more than mere enforcement of an oral contract not enforceable under the statute of frauds was well stated by Lord Chancellor Selborne in Maddison v. Alderson [1883] L. R. 8 App. Cas. (H. L.) 467, where in discussing the doctrine of specific performance of oral contracts he said:

"In a suit founded on such part performance, the defendant is really 'charged' upon the equities resulting from the acts done in execution of the contract, and not (within the meaning of the statute) upon the contract itself. If such equities were excluded, injustice of a kind which the statute cannot be thought to have had in contemplation would follow. * * * The matter has advanced beyond the stage of contract; and the equities which arise out of the stage which it has reached cannot be administered unless the contract is regarded. * * * it is not arbitrary or unreasonable to hold that when the statute says that no action is to be brought to charge any person upon a contract concerning land, it has in view the simple case in which he is charged upon the contract only, and not that in which there are equities resulting from *res gestae* subsequent to and arising out of the contract."

The reasoning in the cited case applies to cases involving oral promises not to plead the statute of limitations. After all, in language, history, and purpose, § 9204 is essentially a statute of frauds. Our statute, like those of most states, is based on the English act of 9 Geo. 4, c. 14, commonly known as Lord Tenterden's

Act. Olson v. Dahl, 99 Minn. 433, 109 N. W. 1001, 8 L.R.A.(N.S.) 444, 116 A. S. R. 435, 9 Ann. Cas. 252. The language of statutes of the Lord Tenterden type is substantially the same as that of the statute of frauds. There is the same requirement for a writing signed by the party to be charged thereby. *Cf.* Mason St. 1927, §§ 8379, 8456-8460. The history and purpose of Lord Tenterden's Act unmistakably shows that it was adopted and regarded as a statute of frauds. The act was adopted as an amendment to the statute of frauds. It is referred to as "Statute of Frauds, Amendment Act, 1828." 10 The Complete Statutes of England in Continuation of Halsbury's Laws of England, pp. 439-440, and notes. It was so construed in Haydon v. Williams, 7 Bing. 163, 166, 131 Reprint, 63, decided two years after its enactment, where the court said, *per* Tindal, C. J.:

*"The statute did not intend, as it appears to us, to make any alteration in the legal construction to be put upon acknowledgments or promises by defendants, but merely to require a different mode of proof;* substituting the certain evidence of a writing signed by the party chargeable, instead of the insecure and precarious testimony to be derived from the memory of witnesses."

See 20 Halsbury's Laws of England (Hailsham, 2d) p. 626, note a. But it makes little difference whether the statute be regarded as one of frauds or limitations. The same principles apply to both. In R. H. Stearns Co. v. United States, 291 U. S. 54, 61, 54 S. Ct. 325, 328, 78 L. ed. 647, the court said:

"We think it an unreasonable construction that would view the prohibition of the statute [of limitations] as overriding the doctrine of estoppel." (Parenthetical matter supplied.)

The authorities cited *supra* amply support that view.

We adopt and follow the rule that a party may be estopped to set up the statute of limitations as a defense by an oral agreement performed by the other party to his prejudice notwithstanding the requirement of § 9204 that such an agreement be in writing.

There are some cases to the contrary, of which the principal one is Shapley v. Abbott, 42 N. Y. 443, 1 Am. R. 548, upon which defendant relies. This case overruled numerous earlier cases by the New York courts which followed the rule allowing an estoppel in a case of this kind. With all due deference, we refuse to follow that case because the reasons advanced in support of the conclusion there reached do not appear sound to us. Decision was based upon two grounds, viz., that there can be no estoppel based upon a promise—that estoppel must rest on misrepresentation of a past or present fact—and that, since the statute similar to our § 9204 there considered was designed to prevent frauds and perjuries, public policy prevented an estoppel to set up the statute as a defense. The first ground has been pretty well shot through by later decisions of that court upholding the doctrine of promissory estoppel. Allegheny College v. National Chautauqua County Bank, 246 N. Y. 369, 159 N. E. 173, 57 A. L. R. 980; 1 Williston, Contracts (Rev. ed.) § 139. The second ground has been overruled in principle by later decisions. The New York court has adopted a diametrically opposite view in numerous cases giving effect to oral contracts within the statute of frauds upon the grounds of part performance. It has held that a party may be estopped by an oral contract within the statute of frauds—the statute designed to prevent frauds and perjuries—where the other party in reliance thereon has performed to his prejudice. Imperator Realty Co. Inc. v. Tull, 228 N. Y. 447, 457, 127 N. E. 263, 266. In the cited case, Mr. Justice Cardozo, then on the state bench, in his concurring opinion said:

"Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver.  *  *  *  We need not go into the question of the accuracy of the description.  *  *  *  The truth is that we are facing a principle more nearly ultimate than either waiver or estoppel, one with roots in the yet larger principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong.  *  *  *  The Statute

of Frauds was not intended to offer an asylum of escape from that fundamental principle of justice."

The principles of promissory estoppel announced in later New York cases holding that such an estoppel may be a substitute for consideration, as in the Allegheny College case, and that there may be such an estoppel to set up the statute of frauds as a defense, as in the Imperator Realty Co. case, apply equally to a case involving estoppel to set up the statute of limitations as a defense. The reasoning in the Imperator Realty Co. case was adopted by the Supreme Court of the United States in R. H. Stearns Co. v. United States, 291 U. S. 54, 61, 54 S. Ct. 325, 78 L. ed. 647, *supra,* in holding that a party may be estopped to assert the statute of limitations as a defense.

Furthermore, the Shapley case, 42 N. Y. 443, has been generally disapproved. Tucker v. Owen (4 Cir.) 94 F. (2d) 49; Holman v. Omaha & C. B. Ry. & Bridge Co. 117 Iowa, 268, 90 N. W. 833, 62 L. R. A. 395, 94 A. S. R. 293, *supra;* Bridges v. Stephens, 132 Mo. 524, 34 S. W. 555. True, the Virginia court in Soble v. Herman, 175 Va. 489, 9 S. E. (2d) 459, did not follow Tucker v. Owen. In Sadler v. Marsden, 160 Va. 392, 168 S. E. 357, it did, however, announce adherence to the rule which was applied in that case.

Of course the statute of limitations should be given full effect as a statute of repose, but that does not mean that, where the parties have agreed to extend the period or have waived its provisions or are estopped to assert the statute as a defense, full effect should not be given to the agreement, waiver, or estoppel.

The inescapable inference from plaintiff's evidence, if believed, is that defendant, by soothing promises and assurances made before the statute had run, lulled plaintiff into believing that if he did not sue defendant would either pay the note or make a settlement after Thanksgiving day; that he would then have the means for performing his promises; that he had no intention of keeping his promises; and that he manifested his deceit by laughing at plaintiff when the bar of the statute had apparently run. We

will give full effect to the statute as a bar where decision is not compelled the other way by some controlling rule of equity. But where the party setting up the statute as a defense is estopped to do so, we will give effect to the estoppel to prevent fraud and injustice. This is such a case.

Affirmed.

JULIUS J. OLSON, JUSTICE (dissenting).

The problem here is well stated by the court in a memorandum attached to its order granting a new trial:

"The motion for a directed verdict for the defendant was granted on the ground that the statute of limitations could not be tolled by the parties except by 'some writing signed by the party to be charged thereby,' and no such writing was proved by the plaintiff. If that were all that is involved here, the motion for a new trial would be denied.

"The holding now is that a *defendant may be estopped to plead the statute by an oral promise, made before the statute has run, not to plead it,* and that the testimony of the plaintiff's witnesses, if believed by the jury, would be sufficient to establish such an estoppel." (Italics supplied.)

Our statute, Mason St. 1927, § 9185, provides:

"Actions can only be commenced within the periods prescribed in this chapter, after the cause of action accrues." (In this case six years.)

To toll that statute, § 9204 provides:

"No acknowledgment or promise shall be evidence of a new or continuing contract * * * unless the same is contained in some writing signed by the party to be charged thereby."

Not until nearly seven and one-half years after the contract matured was the present action commenced. To void its consequences, we have as a basis therefor the testimony of plaintiff, which may be summarized in this fashion:

"I told Mr. Bradley that the Northern National Bank were forcing the settlement of my account with them and the reason why I owed them, he knew, was because he owed me, and that it was absolutely necessary that I collect some of this principal and interest at this time because the bank had served me that they were going to sell out the collateral of my wife and of my father and I couldn't stand for it if it was in any way possible to get out of it, and I told Mr. Bradley I was unable to even pay the interest and it would be absolutely necessary that I collect something, or else we would have to use other means of collecting. That is the gist of our whole conversation that day.

Q. "What did Mr. Bradley say in response to that?

A. " 'It is unnecessary for you to take any other action now because of the fact that I am going to be released this fall from the First National Bank of the collateral that they had and I will be able then to make some new arrangement with you and settle your old account, you are the only one that I will owe.' * * * 'It is unnecessary for you to do anything now, wait a few months, you will not lose anything by waiting.' * * * Around Thanksgiving time he would be all cleaned up at the other bank.

Q. "What was he going to do then?

* * * * *

A. "Make new arrangements with me and settle the account with interest. * * * I never told him I would not sue him.

* * * * *

Q. "Was there anything said in that conversation about the question of the claim outlawing or anything of that sort?

A. "No, sir."

In the early case of Whitaker v. Rice, 9 Minn. 1, 6 (13, 18), 86 Am. D. 78, this court quoted from the case of Van Keuren v. Parmelee, 2 N. Y. 523, 526, 51 Am. D. 322 (decided in December 1849), giving a history of the original statute of 21 James 1, c. 16. This statute, said the court—

"was not very well received by the legal profession." Consequently the courts began to regard it "with disfavor, and to resort to the most subtle constructions for the purpose of restricting its influence. There was a period when one who was spoken to on the subject of an old debt could not well give a civil answer without saying enough to take the case out of the statute." Later, the courts "began to regard this as a beneficial statute—a statute of repose—and commenced the difficult task of retracing their steps. But there were many obstacles in the way of the backward movement; and the legislature, both here and in England, took up the matter, and went beyond the old statute by requiring a new promise or acknowledgment to be in writing. In consequence of the early departure from principle in the construction of the statute, the different views which prevailed at different periods, and the unequal pace of the courts in attempting to get back on solid ground, the books are full of conflicting decisions, and any attempt to reconcile them would be a useless waste of time."

In Olson v. Dahl, 99 Minn. 433, 436, *et seq.*, 109 N. W. 1001, 8 L.R.A.(N.S.) 444, 116 A. S. R. 435, 9 Ann. Cas. 252, the history of the act is well summarized by Mr. Justice Brown.

But the struggle has not ended, for, as said by Mr. Justice Peterson, by "the great weight of authority" the courts still adhere to the old theory of looking with disfavor upon it as one of genuine repose. The reason is not far to seek because there is an apparent injustice resulting where a valid debt by a strict application of the statute deprives of his claim one who has not been insistent against his debtor in collecting his debt. In 16 Harv. L. Rev. 517, 518, is found a note bearing upon what was then considered the recent cases (it was written nearly 40 years ago), but the author of the note, after reviewing the cases, came to this conclusion:

"On principle there seems to be no reason why the result of the statute of limitations as applied to debts should differ from that where it is applied to land. Though the statute in terms bars

only the remedy, in land cases it is well settled that when the statutory period has run, a good title is conferred on the adverse possessor and the true owner's right is gone. * * * Such a theory is in its nature as applicable to debts as to land. Practically it might seem as harsh that a true owner should lose his land, as that a creditor should lose his debt. Yet the results in the cases of real estate have been generally recognized as desirable. It is to be regretted that the law as to debts is settled on opposing lines. In any event the recent cases noted above show a fortunate tendency to limit that doctrine."

And the same thought is stated by the author in 4 Dunnell, Dig. & Supp. § 5634.

The precise question before us never has been decided in this state, so we are free to adopt or reject the rule laid down by mere weight of the number of decisions by other courts. Being thus free from such "weight," we should apply the statute as written and give it full effect. No layman reading it can come to any other conclusion than that to revive an old debt or to continue the existence of a contract still effective there must be literal compliance with its requirements. Why, then, should courts lend their aid to destroy a statute of repose? If mere oral statements are allowed to toll it we have virtually no statute at all. The past history of the act and the language chosen by the lawmakers in enacting it bespeak its purpose. Compliance with its requirements is not difficult. Part payment of interest or principal is within its expressed terms made applicable to the continued existence of the contract as originally made. The debtor can renew the promise or provide for its continuance by executing "some writing signed by" him. When parties contract they do so in the daylight of existing law. Neither party to a contract will be heard to say that he did not know what the law was and by such means escape the consequences of his deliberate acts. And why isn't this the appropriate rule to apply in cases of this type?

The necessity of a writing to renew or extend a debt is illustrated in such cases as In re Estate of Walker, 184 Minn. 164, 238

N. W. 58, 76 A. L. R. 1450; Olson v. Myrland, 195 Minn. 626, 264 N. W. 129. The sufficiency of such promise or acknowledgment was thoroughly discussed and disposed of in Reconstruction Finance Corp. v. Osven, 207 Minn. 146, 148, 149, 290 N. W. 230. We there said that "an unqualified and unconditional acknowledgment of a debt implies a promise to pay it, the effect of which is to place the debt on the footing of one contracted at the time of such acknowledgment." That case further holds that "it is immaterial whether the acknowledgment precedes or follows the bar of the statute of limitations on the debt." These cases and those cited therein go far to sustain my contention that the statute should be given effect only when there has been compliance with its terms. In the Myrland case (195 Minn. 626, 264 N. W. 129) we held parol evidence inadmissible to show an extension of the debt. There the question presented was whether a certain letter was sufficient to come within the provisions of the statute. There, as in the Osven case, we held that the writing was sufficient. Shapley v. Abbott, 42 N. Y. 443, 1 Am. R. 548, although representing the minority view, to my mind outweighs in sound public policy and reason the numerical majority view. See Lively v. Tabor, 341 Mo. 352, 107 S. W. (2d) 62, 111 A. L. R. 976, 981, and annotation, p. 984, *et seq.*

Nor do I believe that the cases cited in the majority opinion in respect to estoppel based on an oral promise of a purchaser at a foreclosure sale that he will forego the statutory limit of time to effect a redemption are in point. This is so for the simple reason that there is no statutory prohibition intervening, such as we have here. Furthermore, such purchaser does not lose his investment. At most there is but delay in getting title to the land or the proceeds of the sale price.

By giving effect to the act as written and by literally applying it, we shall be "on solid ground" instead of floundering in the quagmire of doubtful oral agreements which may or may not be founded upon actualities.

The order should be reversed.

Mr. Justice Stone, absent on account of illness, took no part in the consideration or decision of this case.