**BETHESDA LUTHERAN CHURCH, a non-profit corporation, Respondent,**

v.

**TWIN CITY CONSTRUCTION COMPANY, Defendant and Third Party Plaintiff, Respondent (C4–84–320), Appellant (C4–84–334),**

v.

**BUILDING SPECIALTIES, INC., Third Party Defendant, Appellant (C4–84–320), Respondent (C4–84–334).**

**Nos. C4–84–320, C4–84–334.**

Court of Appeals of Minnesota.

Oct. 9, 1984.

Randolph E. Stefanson, Stefanson, Landberg, Plambeck & Geeslin, Moorhead, for Bethesda Lutheran Church.

Steven L. Marquart, Cahill, Jeffries & Maring, P.A., Moorhead, for Twin City Const. Co.

Carlton J. Hunke, Pamela J. Hermes, Vogel, Brantner, Kelly, Knutson Weir & Bye, Ltd., Fargo, N.D., for Building Specialties, Inc.

Heard, considered and decided by POPOVICH, C.J., and LESLIE and CRIPPEN, JJ.

## OPINION

LESLIE, Judge.

Plaintiff Bethesda Lutheran Church filed this action against Twin City Construction Company which in turn filed a complaint against third-party defendant Building Specialties. After trial the jury delivered a verdict finding both defendant and third-party defendant negligent and assessing damages. The trial court made additional findings of fact with its conclusions of law and order for judgment. Defendant and third-party defendant brought motions for judgment NOV or, alternatively, for a new trial which the trial court denied. The appeals of both defendant and third-party defendant are consolidated.

We affirm.

## FACTS

In 1968 plaintiff Bethesda Lutheran Church (Bethesda) of Moorhead, Minnesota began planning a new church and contracted with an architectural firm, Adkins Associates, to design the church. Adkins prepared architectural plans and drawings for the church which Bethesda let for bids in 1971. In February 1971 Bethesda and defendant Twin City Construction Company (Twin City) entered a construction agreement for the church.

The roof design provided for unique peaks and slopes. Some of those features

had to be built up from the roof deck by layering plies of paper and felt coated with tar. Twin City constructed the roof deck and shingled those areas which did not need to be built up. It subcontracted with third-party defendant Building Specialties for construction of the built up areas. Construction on the church began in April 1971 and continued until January 1972 when representatives of Bethesda, Adkins, and the contractors inspected the completed building.

The Bethesda congregation began using the new church building in February 1972. By April 1972 members of Betheda noticed water leakage through the church ceiling. Bethesda's pastor, Rev. Anttila, contacted both Twin City and Building Specialties about the problem. Twin City agreed to attempt to fix the roof and gave Bethesda a two-year guarantee on the roof for workmanship and materials. Building Specialties apparently informed Anttila that it would not repair the roof.

Twin City made numerous attempts to stop the leaks beginning in the spring of 1972 until 1977. Nonetheless the roof leaked chronically, causing damage to the church interior. The evidence suggested several reasons for the leaks. Anttila testified he frequently saw pools of water on the roof which did not drain off after rains. The roof architect, Roger Sjobeck testified that the water pooled because the roof deck was improperly constructed to slope where it should have been flat. This defect caused at least one drain to be higher than some areas of the roof.

Anttila testified that a Twin City employee came to the church in June 1977 to handle a complaint that the roof was leaking again. The employee went up on top of the roof and discovered that a drain was not draining even though water ponded on top of it. He took the grate off and used a long pole to force out material blocking the drain. The pastor caught the material at the other end of the drain. Anttila described it as a glob of tar covered insulation material with rock and stone piled on top of it.

Testimony also showed that blisters formed on parts of the roof. Moisture in the roof insulation below the roof surface heats up in the sun and bubbles causing blisters. When the blisters eventually crack, they can cause leaks. The blisters occur when wet insulation material is used or asphalt is improperly mopped on to the roofing materials.

Finally, plaintiff presented evidence that nails used to secure the flashing strips on the roof were hammered in too close to the roof, allowing water to soak through the roof when it had ponded on the roof. No testimony, however, showed that the nail holes actually leaked water.

In August or September of 1978, Twin City informed Bethesda it would no longer repair the roof. Bethesda decided to replace the roof in the fall of 1978. The new roof contained more layers of felt and tar than the original and more insulation. Not including the price of adding insulation, the roof cost $18,300.00. It was installed on the same deck Twin City had built. The new roof has not leaked.

Bethesda commenced this lawsuit in September 1978 against Twin City. Twin City brought its third-party action against Building Specialties for contribution or indemnity in January 1979. The jury found Building Specialties 50% negligent, Twin City 30% negligent, and Adkins Associates 20% negligent. It determined the reasonable cost of replacing the roof was $18,000.00.

### ISSUES

1. Does the evidence support the jury's verdict that Twin City and Building Specialties were causally negligent in constructing plaintiff's roof?

2. Does the evidence support the jury's determination that the reasonable cost of constructing a new roof was $18,000.00?

3. Did the trial court err by instructing the jury that defendant's failure to notify plaintiff or the architect of design defects constitutes negligence if defendants knew or should have known the defects existed?

4. Is Twin City estopped, by its promises to repair the roof, from asserting the statute of limitations as a defense to plaintiff's action for negligent construction of the roof?

5. Does the statute of limitations on plaintiff's negligence claim prevent Twin City from bringing a third-party action against Building Associates for contribution or indemnity?

## ANALYSIS

### I. Sufficiency of Evidence on Negligence

■ Twin City and Building Specialties claim the evidence does not support the jury's allocation of negligence.[1] They point to substantial evidence in the record showing a defective roof design caused the leakage. They claim the roof design placed a drain higher than other parts of the roof. Their evidence includes expert testimony that design defects caused the leaks. They argue that any evidence of construction defects did not show the defects caused the leakage.

■ On appeal from a denial of a motion for judgment NOV, the evidence must be viewed in the light most favorable to the verdict. The verdict should stand unless manifestly and palpably contrary to the evidence. *Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256 (Minn.1980). Circumstantial evidence may alone establish negligence as long as the evidence does not equally sustain any other theory. *E.H. Renner & Sons, Inc. v. Primus*, 295 Minn. 240, 243, 203 N.W.2d 832, 835 (1973).

■ The evidence at trial showed several roof problems that allegedly caused the leaks: improper construction of the roof deck support joists, use of wet insulation or roofing materials, incorrect nailing of the flashing strips, and the plugged drain.

While Bethesda did not unequivocally establish which one of these problems actually caused the leaks, Bethesda did not need to. Bethesda presented sufficient evidence to show these problems existed and that either Twin City, Building Specialties or Adkins Associates negligently created those problems. The jury could reasonably find that more than one problem and more than one party contributed to cause the leaks. The existence of other less persuasive causal theories is not sufficient reason for an appellate court to overturn a judgment based upon a jury's verdict.

### II. Sufficiency of Evidence on Damages

Twin City and Building Specialties argue no evidence reasonably supports the jury's assessment of $18,000 in damages. They claim the cost of the replacement roof, $18,300, is not a fair basis for assessing damages because the new roof contains 5 layers of roof materials instead of the 3 in the original roof. They claim it also has more insulation and more flashing. Since no evidence was presented at trial on the costs of those additional materials they argue Bethesda failed to meet its burden on this issue.

■ The measure of damages is the replacement cost of a roof conforming to the original contract. *Northern Petrochemical Co. v. Thorsen & Thorshov, Inc.*, 297 Minn. 118, 124, 211 N.W.2d 159, 165 (1973). Generally, damages need not be proved with absolute certainty nor with mathematical precision. Sufficient proof must be given, however, to avoid speculative awards. *Hornblower & Weeks-Hemphill Noyes v. Lazere*, 301 Minn. 462, 467, 222 N.W.2d 799, 803 (1974).

■ We find the evidence of the replacement cost adequate to support the $18,-

---

1. The trial court submitted this case on the negligent breach of a contractual duty theory and allowed the jury to compare the fault of the parties. Since the trial, the Minnesota Supreme Court has clarified the law and indicated it has not yet recognized that cause of action except in special circumstances. *See Lesmeister v. Dilly*, 330 N.W.2d 95, 102 (Minn.1983). *Accord Mike's*

*Fixtures, Inc. v. Bombard's Access Floor Systems, Inc.*, 354 N.W.2d 837 (Minn.Ct.App.1984). No party objected to the trial court's instructions and thus the instructions are the law of the case. *Furlev Sales and Associates v. North American Automotive Warehouse, Inc.*, 325 N.W.2d 20, 28 (Minn.1982).

000.00 damage award. The only difference between the two roofs is the additional tar and flashing. The cost of additional insulation was not included in the $18,300.00 figure. That figure combined with the great similarity between the two roofs gave the jury sufficient evidence with which to determine the cost.

### III. Jury Instructions on Contractor's Liability

Both Twin City and Building Specialties claim they were prejudiced by the trial court's instruction on their liability for a defect in the architectural design of the roof. The court instructed the jury that Twin City or Building Specialties were negligent if they knew or should have known that the designs were defective and failed to notify the architect or take any other preventative step.

Twin City and Building Specialties rely upon *Friederick v. County of Redwood*, 153 Minn. 450, 190 N.W. 801 (1922). In that case the court held that under most construction contracts a contractor is not liable for defects not the product of poor workmanship or materials. *Id.*, at 451–52, 190 N.W. at 802. The court noted, however, that the contractor's duties may be enlarged by specific provisions in the contract.

Bethesda counters by quoting from the construction contract:

Detail Drawings and Instructions: If the drawing or specifications require work to be done in a manner which in the contractor's opinion makes it impossible to produce first-class work, he is expected to request an interpretation from the [architectural engineer] before proceeding with the work. If the contractor fails to make such a request, no excuse will thereafter be entertained for failure to execute work in a satisfactory manner.

This provision places a duty to alert upon Twin City. Its failure to alert constitutes a breach of contract and negligence under the law of this case. *Cf. Northern Petrochemical Co. v. Thorsen & Thorshov, Inc.*, 297 Minn. 118, 211 N.W.2d 159. Accordingly, Twin City and Building Specialties suffered no prejudice.

### IV. Statute of Limitations on Bethesda's Claim Against Twin City

Twin City and Building Specialties argue that the statute of limitations on Bethesda's cause of action ran before this suit was commenced in September 1978. All parties agree that the six-year statute of limitations, Minn.Stat. § 541.05 (1978), applies here. *Kittson County v. Wells, Denbrook & Associates*, 308 Minn. 237, 241 N.W.2d 799 (1976).

Bethesda argues the statute of limitations did not begin to run until Twin City stopped repair attempts. Alternatively, Bethesda contends equity estops Twin City from asserting the statute of limitations since Twin City's continuing repair attempts lulled it into letting the statute run. The trial court found equitable estoppel applied to prevent Twin City from asserting the defense. We agree with the trial court's analysis and thus do not reach Bethesda's other argument.

*Equitable Estoppel*

Equitable estoppel is a doctrine designed to prevent a party from taking unconscionable advantage of his own actions. To invoke this doctrine plaintiff must show that defendant made representations or inducements upon which plaintiff reasonably relied that will cause plaintiff harm if estoppel is not applied. *Northern Petrochemical Co. v. U.S. Fire Insurance Co.*, 277 N.W.2d 408, 410 (Minn.1979).

Whether the elements of equitable estoppel are present is a question of fact. *See O'Donnell v. Continental Casualty Co.*, 263 Minn. 326, 331, 116 N.W.2d 680, 684 (1962). Defendants argue that Twin City's representations concerning repair of the roof are insufficient as a matter of law to meet the inducement requirement. They argue the cases require an express or implied promise that the statute of limitations will not be asserted as a defense.

In this case Twin City made numerous promises to repair the roof includ-

ing a two-year warranty it gave Bethesda in May 1972, shortly after the leakage problem began. Its attempts to cure the problem continued over the next six years. Twin City only refused further repair attempts in August or September 1978, just over six years after it completed the church building.

Bethesda relies upon *Albachten v. Bradley*, 212 Minn. 359, 3 N.W.2d 783 (1942) to argue Twin City's promises to cure the roof leaks satisfy the inducement element. In *Albachten* plaintiff demanded payment of a promissory note sometime before the statute of limitations ran. The court described the following facts:

Defendant requested plaintiff to wait until Thanksgiving time, which was about three months after the statutory period of limitation would have run, and promised that he would then make a new arrangement or settle plaintiff's claim. Among other things, defendant told plaintiff that it was unnecessary for him to commence an action to enforce payment; that defendant expected to procure a return of his collateral from his bank about Thanksgiving time; that then plaintiff would be his only creditor; and that plaintiff would not lose anything by waiting.

*Id.* at 360, 3 N.W.2d at 784. The court held those representations sufficient to form the basis for estoppel, stating "it is not important that there was no express mention of the statute of limitations * * *. The assurance that plaintiff would not lose anything by waiting was in effect an agreement that the statute of limitations would not be asserted as a defense by defendant." *Id.* at 362, 3 N.W.2d at 785.

Here the evidence showed continuing promises to cure the leaks until shortly after the statute ran. In October 1977 Twin City's vice president wrote Anttila that it would "stand by the weatherproofness of the roof for another two years" to the extent of $500 repair costs. The trial court found this written representation and other oral promises to repair the roof induced delay of legal action. We find this conclusion supported by the evidence and not clearly erroneous.

*Limitation of time, Writing requirement*

Even though Twin City's actions may have induced Bethesda's reasonable reliance, Twin City and Building Specialties contend that Minn.Stat. § 541.17 (1978) nullifies application of equitable estoppel. That statute states:

No acknowledgment or promise shall be evidence of a new or continuing contract sufficient to take the case out of the operation of this chapter unless the same is contained in some writing signed by the party to be charged thereby; but this section shall not alter the effect of a payment of principal or interest.

Defendant further argues estoppel by oral agreement should only be applied to contract actions for money debts, and not to tort actions such as this action. In *Olson v. Dahl*, 99 Minn. 433, 109 N.W. 1001 (1906) the supreme court stated the following dictum:

The new promise or part payment has never, however, been applied to actions in tort, or those founded upon specialties. The rule has been confined to contracts, express or implied, for the payment of money. Where actions in tort or upon specialties are required to be brought within a specified time, no part payment or promise to pay will operate to suspend the operation of the statute, or remove the bar when it has once attached.

*Id.* at 436, 109 N.W. at 1002.

Despite the language in Minn.Stat. § 541.17 the Minnesota Supreme Court held that equitable estoppel will apply to extend the time for filing suit even though the promises are oral. *Albachten v. Bradley*, 212 Minn. 359, 367, 3 N.W.2d 783, 787 (1942). Although the parties did not mention the statute of limitations in the agreement, the court interpreted it as an agreement to pay although the statute expired.

We hold that equitable estoppel applies to the statute of limitations on Bethesda's negligence claim. We see no valid policy reason for not applying equitable

estoppel to this negligence claim when it applies to contract actions. *See generally Albachten v. Bradley*, 212 Minn. at 366–67, 3 N.W.2d at 786–87. *See also Nowell v. Great Atlantic and Pacific Tea Co.*, 250 N.C. 575, 108 S.E.2d 889 (1959) (construction law). The distinction in construction law between contract and negligence is blurred. *Cf., Marshall v. Marvin H. Anderson Construction Co.*, 283 Minn. 320, 324–25, 167 N.W.2d 724, 727 (1969). This action was itself brought under both theories but submitted to the jury under only the negligence count at the trial court's discretion.

## V. Limitation on Twin City's Contribution Action Against Building Specialties

The reasons for extending Bethesda's time to bring its action against Twin City do not exist to extend Bethesda's time to sue Building Specialties. The parties dispute whether Twin City can still seek contribution or indemnity from Building Specialties even though Bethesda could not sue Building Specialties.

■ Twin City based its third party complaint against Building Specialties on contribution. Contribution is an action in equity. *Spitzack v. Schumacher*, 308 Minn. 143, 241 N.W.2d 641 (1976).

> [It] rests upon a common liability of joint tortfeasors to an injured party and the payment of more than his share by one of the codefendants * * *

*Bunge v. Yager*, 236 Minn. 245, 252, 52 N.W.2d 446, 450 (1952). A cause of action for contribution "accrues when the person entitled to the contribution has sustained damage by paying more than his fair share of the joint obligation." *Calder v. City of Crystal*, 318 N.W.2d 838, 844 (Minn.1982), *citing, Grothe v. Shaffer*, 305 Minn. 17, 232 N.W.2d 227 (1975).

Building Specialties asserts it cannot be held jointly liable to Bethesda along with Twin City. It advances several reasons for that position.

### Common liability

■ Building Specialties first argues that common liability does not exist between itself and Twin City because Bethesda's cause of action is now barred. Therefore it claims there should be no cause of action for contribution.

That argument contradicts language in *Spitzack v. Schumacher*, 308 Minn. at 145–46, 241 N.W.2d at 643:

> The defenses of release, statute of limitations, and lack of statutory notice do not deny liability, but rather avoid liability. Thus, the underlying common liability was never extinguished and a joint tortfeasor's right to contribution was allowed.

*Spitzack* demonstrates Twin City and Building Specialties remain commonly liable and an action for contribution exists.

### Equity

Building Specialties also argues that allowing an action in equity against it by Twin City is unfair when Twin City chose to prolong its liability by continuing efforts to fix the roof. Building Specialties insists it should not suffer increased exposure because of actions over which it had no control. Thus, Building Specialties argues, Twin City should bear full responsibility for any liability to Bethesda.

■ While this argument could bear weight in some cases it does not here, for not all the equities favor Building Specialties. The record indicates that Building Specialties abandoned the project after it completed its initial work. Twin City, on the other hand, attempted to cure the roof over a period of years. Attempts to complete contractual obligations should be encouraged to the extent they are not used to lull would be complainants while limitations periods run.

### Minn.Stat. § 541.051

Building Specialties argues that the Minn.Stat. § 541.051 (1980) two-year period for actions bars this action. That statute was declared unconstitutional in 1977 and amended in 1980 to take effect August 1,

1980. 1980 Minn. Laws ch. 518, §§ 2–4. *Pacific Indemnity Co. v. Thompson-Yaeger, Inc.*, 260 N.W.2d 548 (Minn.1977). This action was commenced between those dates. Section 541.051 provides that actions, including actions for contribution and indemnity, must be commenced within two years after discovery of a defect and not more than fifteen years after completion of construction. Since the roof leaks were discovered in 1972, more than six years before this action, Building Specialties claims § 541.051 bars this contribution action.

Both Twin City and Building Specialties agree this issue is governed by *Calder v. City of Crystal*, 318 N.W.2d 838. In *Calder* the City of Crystal was sued in June 1979 by a number of property owners for damage caused by a defective water drainage system in July 1978. The city impleaded third-party defendant Schoell alleging contribution in September 1980, approximately 15 months after it was sued and one month after the amended Minn.Stat. § 541.051 took effect.

Schoell moved for summary judgment alleging the two year § 541.051 statute of limitations had run as had the 15 year ceiling on actions. The city argued that such application of § 541.051 was improperly retroactive or, in the alternative, a violation of due process.

The supreme court held that § 541.051 was not retroactive but nonetheless applied to the City's contribution claim to preclude the action the date the statute first took effect. That application was not retroactive because the city was barred only after the effective date of the statute.

 The supreme court's analysis of the issue is complex. What is significant here is that the city "had nearly 14 months to file its third-party complaint before the statute became effective." [2] *Calder*, 318 N.W.2d at 842. Because it had 14 months, or until August 1, 1980, to join third par-

ties, the statute did not violate due process by barring an action before it could be brought. *Id.* at 844.

This case differs from *Calder* in one crucial way: Twin City filed its third-party contribution claim before August 1, 1980 and within the same period of time the *Calder* court said the City of Crystal could have filed its third-party action. Under *Calder* Minn.Stat. § 541.051 does not apply to Twin City's third-party contribution claim.

## DECISION

Sufficient evidence exists in the record to support the jury's verdict on negligence and damages. The trial court's instructions on negligence were proper under the terms of the construction contract. Twin City Construction Company is estopped from asserting the statute of limitations as a defense to Bethesda's claim and Building Specialties is not entitled to use Minn.Stat. 541.051 as a defense to Twin City's third-party contribution claim.

Affirmed.

---

2. This holding acknowledges both that the city's contribution claim had not technically accrued when barred because it had not yet paid more than its fair share of the common liability, and that the city could bring a third party action for contribution before the claim technically accrued.