James **WETZEL**, Plaintiff,

v.

**EATON CORPORATION** et al., Defendants.

No. 4–72–Civil 95.

United States District Court, D. Minnesota, Fourth Division.

Oct. 12, 1973.

Reed K. Mackenzie, Hvass, Weisman & King, Minneapolis, Minn., for plaintiff.

W. D. Flaskamp, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Minn., for defendants Eaton Corp.

Charles A. Mays, Leonard, Street & Deinard, Minneapolis, Minn., for FWG Corp.

## MEMORANDUM

LARSON, District Judge.

Defendant FWG Corporation moves for summary judgment under Rule 56 of

the Federal Rules of Civil Procedure in this personal injury diversity suit.

Plaintiff James Wetzel, a farm workman, was injured October 18, 1966, when a tractor on which he was riding overturned while pulling a hay wagon. Wetzel is a citizen of North Dakota, the State in which the accident occurred. Defendant Eaton Corporation is an Ohio corporation, successor of Char-Lynn Company, which manufactured, in whole or in part, and sold the tractor that Wetzel was riding.[1] Defendant Precision Products, Inc., is an apparently defunct Minnesota corporation that was an intermittent supplier of component parts to Char-Lynn during the years preceding the accident. FWG is a Minnesota corporation that through its predecessor Northwest Automatic Products, Inc., also intermittently supplied tractor parts to Char-Lynn during this same time period.

Wetzel instituted this suit February 8, 1972, charging strict liability in tort and negligence on the part of defendants in the manufacture of the tractor and its component parts. He claims that the accident resulted from a defective power steering mechanism, manufactured, in whole or in part, and sold by Eaton, through Char-Lynn. He attributes the defect to an allegedly faulty drag link adapter, a component part manufactured and sold to Char-Lynn by Precision and/or FWG, through its predecessor. Wetzel seeks $350,000 damages. Jurisdiction is premised on 28 U.S.C. § 1332. Jury trial has been demanded.

Not having interposed an answer, Precision is in default. FWG's answer denies that it or its predecessor manufactured or sold the adapter in question. Eaton likewise denies the principal allegations. Its answer also makes cross-claims against Precision and FWG for indemnity in the event that Eaton is found liable to Wetzel.[2]

Interrogatories of Wetzel, taken by FWG, and of Eaton, taken by Wetzel, indicate that the steering unit was installed in the tractor in 1963. No inspection apparently was undertaken of the adapter on behalf of Wetzel after the accident, although two visual examinations were made of comparable parts in 1972, six years later. Plaintiff has photographs of the scene of the accident taken in 1966 and of the tractor, apparently repaired and functioning with a replacement adapter, taken in 1972. But the adapter in question apparently has been discarded or destroyed and hence no longer is available for examination.

█ Furthermore, no business records or other documentation appear to be available tying FWG to the manufacture or sale to Char-Lynn of the allegedly defective adapter. Answering Wetzel's interrogatory as to the identification of the manufacturer of the part, Eaton responded as follows:

"Northwest Automatic Products [FWG's predecessor] *or* Precision Products *could have* supplied the part in question. Specific records of the specific drag link adapter apparently are not available." (Emphasis supplied.) [3]

---

1. Char-Lynn was purchased by Eaton on December 31, 1970. Eaton's records indicate that its distributor sold the tractor in question to a North Dakota dealer, who apparently in turn sold it to the farmer for whom Wetzel was working at the time of the accident.

2. Eaton's answer has been served on the other parties, but it has not yet been filed with the Court.

3. The absence of any direct evidence linking FWG to the controverted adapter is similarly indicated by an answer of Wetzel to an interrogatory of FWG. In it Wetzel says that his ex-counsel was informed by Char-Lynn's counsel that Char-Lynn's records indicate that FWG, or its predecessor, "may have been" the supplier of the part. Because this answer contains double hearsay, it might not be cognizable as admissible evidence under Rule 56(e). The business

In sum, FWG's linkage to the allegedly defective adapter is based wholly on its having been one of two suppliers (along with Precision) prior to the accident. Based on the absence of any other evidence linking it to the adapter, FWG has moved for summary judgment against the plaintiff and cross-claimant Eaton. FWG contends that there is no legally supportable basis upon which it could be held liable in this action. In support of its motion, FWG has submitted an affidavit of its president, maintaining that visual inspection of the adapter is necessary to determine who manufactured the part, and also denying that FWG, or its predecessor, manufactured or sold the adapter in question.

Wetzel is indifferent to the granting of the motion.[4] He has expressed "no factual basis to tie FWG to the (adapter) part" and therefore offers no opposition to the motion. Eaton, however, resists the motion, envisioning recovery over against FWG, should Wetzel prevail in this action. Eaton contends that it should be allowed to go to trial and utilize whatever other evidence and inferences therefrom become available to link the adapter to FWG.

■ Because the record now before the Court clearly demonstrates that neither Wetzel nor Eaton will be able to produce sufficient evidence at trial to survive a directed verdict in favor of FWG on the complaint and on the cross-claim, the Court concludes that summary judgment must be granted.

In this Circuit it has been observed that "if the information presented entitles one to a directed verdict, a summary judgment is in order." Lundeen v. Cordner, 354 F.2d 401, 407 (8th Cir. 1966), motion to amend denied, 356 F.2d 169. The issue of whether the Federal standard or the State standard, under the doctrine of Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is controlling on the sufficiency of evidence to withstand a directed verdict in a diversity case has never been decided · by the Supreme Court. First, in Dick v. New York Life Insurance Company, 359 U.S. 437, 444–445, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959), and subsequently in Mercer v. Theriot, 377 U.S. 152, 156, 84 S.Ct. 1157, 12 L. Ed.2d 206 (1964), the Court has left the question unresolved.

The Circuit Courts are split on the issue. 5A Moore's Federal Practice Para. 50.06, pp. 2347–2350, n. 5–6 (2d ed. 1971). The majority view is that the Federal standard applies. Cooper, Directions for Directed Verdicts: A Compass for Federal Courts, 55 Minn.L.Rev. 903, 974, n. 212 (1971) (hereinafter Cooper); Mull v. Ford Motor Company, 368 F.2d 713, 716, n. 4 (2d Cir. 1966). This view also is favored by most of the commentators who have passed upon the issue. *E. g.,* 5A Moore's Federal Practice, *supra,* Para. 50.06; 2B Barron & Holtzoff, Federal Practice and Procedure, § 871.1, pp. 17–19 (Wright ed. 1961). *But see* Cooper, *supra;* Morgan, Choice of Law Governing Proof, 58 Harv.L.Rev. 153, 171–177 (1944).

Prior to the *Dick* case, the Eighth Circuit took the minority position that

records exception, M.S.A. §§ 600.01–600.04; Proposed Rules of Evidence for U.S. Courts and Magistrates, 56 F.R.D. 300, § 803(6), (1973), might enable one of the hurdles to be surmounted. But it still could not be considered unless another exception to the hearsay rule, perhaps as an admission by an authorized agent on the part of Wetzel's ex-counsel, would be applicable.

In any event, the answer adds nothing of substance to consideration of FWG's motion. It merely confirms the lack of any direct evidence tying FWG to the part, amply demonstrated by the admissible evidence in Eaton's answer to Wetzel's interrogatory.

4. Wetzel's indifference may be predicated on FWG having been liquidated although not yet dissolved, while Eaton appears to be solvent and fully able to respond should it be held liable. The Court, of course, does not consider the relative financial postures of the parties in ruling on this motion under Rule 56.

the pertinent State standard was applicable. Schneider v. Chrysler Motors Corporation, 401 F.2d 549, 554 (8th Cir. 1968); Hanson v. Ford Motor Company, 278 F.2d 586, 589, n. 1 (8th Cir. 1960). Subsequently the Circuit Court has expressly said that the question is open. Grand Island Grain Company v. Roush Mobile Home Sales, Inc., 391 F.2d 35, 41 (8th Cir. 1968). In post-*Dick* cases the issue has been left unresolved because the parties have invariably assumed that the State standard applies and in all cases the relevant State and Federal standards have been virtually identical. Schneider v. Chrysler Motors Corporation, *supra*, 401 F.2d 554–555; Hanson v. Ford Motor Company, *supra*, 589, n. 2.

■ This Circuit, therefore, appears to be shying away from automatic application of State law, in favor of preferring whenever possible to weigh the sufficiency of evidence on both State and Federal standards. Denneny v. Siegel, 407 F.2d 433, 437 n. 8 (3rd Cir. 1969). In sum, when the pertinent State and Federal standards are substantially similar, no determination need be made on the question of•the applicable law. Ford Motor Company v. Mondragon, 271 F.2d 342, 345 (8th Cir. 1959). Rather, the quantum of evidence should be weighed according to the essentially equivalent State-Federal standard. Schneider v. Chrysler Motors Corporation, *supra*; Jiffy Markets, Inc. v. Vogel, 340 F.2d 495, 498 (8th Cir. 1965); Hanson v. Ford Motor Company, *supra*.

■ The case at bar fits this mold because the pertinent State and Federal standards here are substantially alike. Since the accident occurred in North Dakota, the Court must look to the conflicts law of the Minnesota forum to determine whether it would apply Minnesota or North Dakota law to test the sufficiency of evidence. Klaxon Company v. Stentor Manufacturing Company, Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477 (1941). Minnesota law is in accordance with the general view that the local law of the forum determines the standard for sufficiency of evidence on asserted torts occurring in other States. Hanson v. Ford Motor Company, *supra*, 590, n. 3; Stotzheim v. Djos, 256 Minn. 316, 319, n. 2, 98 N. W.2d 129, 131 (1959); Franklin v. Minneapolis, St. Paul & S. S. M. Ry. Company, 179 Minn. 480, 487, 229 N.W. 797, 800 (1930); Restatement (Second) Conflicts of Laws § 135 (1971).

■ The Minnesota standard for directing a verdict was most recently articulated in E. H. Renner & Sons, Inc. v. Primus (1973), 295 Minn. 240, 203 N. W.2d 832, 834, in which the Minnesota Supreme Court said that a directed verdict must be granted when, viewing the evidence in the most favorable light to the non-movant, it would be a court's duty to set aside a contrary verdict as being manifestly against the weight of the entire evidence or it would be contrary to the law applicable to the case. The Court further set out the standard as follows:

"Where the entire evidence sustains, with equal justification, two or more inconsistent inferences so that one inference *does not reasonably preponderate* over the others, the complainant has not sustained the burden of proof on the proposition which alone would entitle him to recover. It becomes the duty of the trial court to direct a verdict because failing to do so would cause any verdict to the contrary to be based upon *pure speculation and conjecture*." 203 N.W.2d at 835. (Emphasis supplied.)

Although differing in semantics from the prevailing Federal standard, the Minnesota test is the practical equivalent of the Federal test. The Federal standard has been significantly contracted in the last generation. In Pennsylvania R. Company v. Chamberlain, 288 U.S. 333, 339, 53 S.Ct. 391, 77 L.Ed. 819 (1933), a directed verdict for the defendant was affirmed on the basis of there being, at most, "an inference

. . . drawn from observed facts which gave equal support to the opposite inference . . . ." The Court then fleshed out the standard as follows:

> "We, therefore, have a case belonging to that class of cases where proven facts give equal support to each of two inconsistent inferences; in which event, neither of them being established, judgment, as a matter of law, must go against the party upon whom rests the necessity of sustaining one of these inferences as against the other, before he is entitled to recover." *Id.*

This test, however, has been supplanted by the one enunciated in Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L. Ed. 916 (1946). In *Lavender* the Court widened the ambit for inferences that permissibly could be drawn from circumstantial evidence and concomitantly limited the granting of directed verdicts to those cases where necessary inferences must be based merely upon speculation and conjecture unsupported by probative facts. 327 U.S. at 653, 66 S.Ct. at 744.

Although *Lavender* was an F.E.L.A. case, its standard has been applied in diversity cases in some Circuits. Wratchford v. S. J. Groves & Sons Company, 405 F.2d 1061, 1066, n. 13 (4th Cir. 1969); Lones v. Detroit, Toledo, and Ironton R. Company, 398 F.2d 914, 919, n. 4 (6th Cir. 1968), cert. denied, 393 U.S. 1063, 89 S.Ct. 714, 21 L.Ed.2d 705 (1969). *But see* Boeing Company v. Shipman, 411 F.2d 365, 370–373 (5th Cir. 1969) (*en banc*), overruling Planters Manufacturing Company v. Protection Mutual Insurance Company, 380 F. 2d 869 (5th Cir. 1967), cert. denied, 389 U.S. 930, 88 S.Ct. 293, 19 L.Ed.2d 282. In any event, the equivalent of the "evi-

dentiary basis" test of Lavender v. Kurn, *supra,* is essentially the one applied in diversity cases in the Eighth Circuit. The standard for directing a verdict in this Circuit is whether "conflicting inferences *reasonably* can be drawn from [the] evidence." Anglen v. Braniff Airways, 237 F.2d 736, 740 (8th Cir. 1956) (Emphasis supplied.) *See also* Lewis v. Nelson, 277 F.2d 207, 210 (8th Cir. 1960); Terminal R. Ass'n of St. Louis v. Fitzjohn, 165 F.2d 473, 478 (8th Cir. 1948); Samuelson v. Central Nebraska Public Power & Irrigation District, 125 F.2d 838, 840 (8th Cir. 1942).[5]

In 1960, the Eighth Circuit Court of Appeals found the Minnesota and Federal standards to be equivalent. Hanson v. Ford Motor Company, *supra,* 589–590. There have been no indications that either test has changed in substance since that time. The standard set out in *E. H. Renner & Sons, Inc.* is phrased differently than the Federal test recognized by this Circuit. It reflects, in part, the language of the now discredited *Chamberlain* case, with its reference to equally supported inconsistent inferences giving rise to a directed verdict. But the standard articulated in *E. H. Renner & Sons, Inc.* is merely a reaffirmation of the long standing Minnesota test for sufficiency of evidence. Lovejoy v. Minneapolis Moline Power Implement Company, 248 Minn. 319, 79 N.W.2d 688 (1956); Albert Lea Ice & Fuel Company v. United States Fire Insurance Company, 239 Minn. 198, 58 N. W.2d 614 (1953). This standard antedates the *Hanson* case in which the Eighth Circuit equated the Minnesota and Federal tests. Accordingly, the prevailing Minnesota standard may be viewed as substantially equivalent to the Federal test in this Circuit.

---

5. Reference occasionally is made to the "equal inference" rule of Pennsylvania R. Company v. Chamberlain, *supra. E. g.,* Pittman v. West American Insurance Company, 299 F.2d 405, 411 (8th Cir. 1962). Most of the cases in this Circuit, however, follow the equivalent of the standard of Lavender v. Kurn, *supra.* Inferences may permissibly be made under this test, provided they are grounded on some probative evidence, not merely based on speculation and conjecture.

In each, a directed verdict is permissible only when the evidence, viewed most favorably to the non-movant, cannot reasonably give rise to an inference supportive of the non-movant's position; in each, a directed verdict must be granted when the non-movant's case rests solely upon speculation and conjecture lacking in probative evidentiary support. Because of this similarity, no determination need be made whether to apply the State or the Federal standard. Schneider v. Chrysler Motors Corporation, *supra*; Ford Motor Company v. Mondargon, *supra*. This case can be decided according to the substantially identical test under Minnesota and Federal law.[6]

■ The Court is convinced that this test cannot be satisfied by the evidence to be adduced in this case. No examination of the controverted adapter was made for identification purposes subsequent to the accident. It no longer is available for inspection. All that remains are inconclusive photographs of the scene of the accident taken in 1966 and of the repaired tractor, with a replacement adapter, taken in 1972. No records apparently are available to determine the origin of the part in question.

In the absence of any direct evidence or any circumstantial evidence giving rise to a reasonable inference that FWG, through its predecessor, manufactured and/or sold the allegedly defective adapter, a fundamental principle of products liability law, be it strict liability or negligence, bars holding FWG liable as a matter of law. The universally recognized doctrine requires that the allegedly defective product be identified as having emanated from, or be charged to, the one sought to be held liable.

"It is manifest that any holding that a producer, manufacturer, seller, etc., is liable for injury caused by a particular product must necessarily be predicated upon proof that the product in question was one for whose condition the defendant was in some way responsible. Thus, for example, if recovery is sought from a manufacturer, it must be shown that he actually was the manufacturer of the product which caused the injury; if recovery is sought from a seller, it must be shown that he actually sold the product in question." 63 Am.Jur.2d, Products Liability § 5, p. 12 (1972).

■ Under Minnesota law, controlling here by virtue of the *Erie* doctrine, the substantive law of liability is determined by the law of the jurisdiction in which the alleged injury occurred. Thieman v. Johnson, 257 F.2d 129 (8th Cir. 1958) (North Dakota guest statute applied); Chicago Great Western Ry. Company v. Beecher, 150 F.2d 394 (8th Cir. 1945), cert. denied, 326 U.S. 781, 66 S.Ct. 339, 90 L.Ed. 473 (1946); Nepstad v. Lambert, 235 Minn. 1, 50 N.W.2d 614

---

6. If, contrary to the Court's supposition, there indeed is a difference between the Minnesota and Federal tests, the Court would prefer to apply the Federal standard. The Circuit Court's departure from strict adherence to State law in post-*Dick* cases, Schneider v. Chrysler Motors Corporation, *supra;* Jiffy Markets, Inc. v. Vogel, *supra;* Hanson v. Ford Motor Company, *supra*, the views of the commentators, and the weight of case law strongly suggest that if forced to choose between the two, the Circuit Court would now select the Federal standard.

Applying the Federal standard would necessitate granting the motion. It is clear that no evidence is to be produced that can give rise to reasonable inferences as to FWG's linkage to the part in question. Anglen v. Braniff Airways, *supra*, 740. Accordingly, summary judgment would be in order under the Federal test. Lundeen v. Cordner, *supra*, 407.

The same result would obtain if State law, assuming it differs from the Federal standard, is applied. Since the evidence would give rise to equally supported inconsistent inferences and there would be only speculation and conjecture, not reasonable deductions, tying FWG to the adapter part, a directed verdict would have to be granted. E. H. Renner & Sons, Inc. v. Primus, *supra*. Accordingly, summary judgment also would be in order. Lundeen v. Cordner, *supra*, 407.

(1951). This is true even though the initial act upon which liability is predicated occurred elsewhere. Atkins v. Jones & Laughlin Steel Corporation, 258 Minn. 571, 104 N.W.2d 888 (1960).

Therefore, reference must be made to the law of North Dakota. There is no indication, however, that North Dakota law deviates from the aforementioned doctrine requiring evidentiary support for identifying the product in question with the one charged with liability. *See* Steuber v. Hastings Heating & Sheet Metal Company, 153 N.W.2d 804 (N.D. 1967); Lindenberg v. Folson, 138 N.W. 2d 573, 582 (N.D.1965).

But the only evidence to be adduced here is that FWG was one of two intermittent suppliers to Eaton's predecessor, which in turn manufactured, in whole or in part, and sold the tractor on which Wetzel was riding. *See* n. 1, *supra.* Standing alone, this fact equally gives rise to mutually inconsistent inferences and affords no reasonable evidentiary basis for a trier of fact to find FWG liable. To associate FWG with the adapter solely on this evidence would contravene the principle that "[t]he essential inference cannot be left to conjecture and speculation." Adair v. Reorganization Investment Company, 125 F. 2d 901, 905 (8th Cir. 1942). *See also* Galloway v. United States, 319 U.S. 372, 395, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943), reh. denied, 320 U.S. 214, 63 S.Ct. 1443, 87 L.Ed. 1851; E. H. Renner & Sons, Inc. v. Primus, *supra,* 203 N.W.2d at 834–835.

■ Eaton's aforementioned answer to Wetzel's interrogatory amply demonstrates that FWG's liability could be predicated only on impermissible conjecture or speculation. This response, the affidavit submitted by FWG, and other material called to the Court's attention, *see* n. 3, *supra,* constitute an adequate showing under Rule 56(c) that no material issue of fact exists as to FWG's manufacture or sale of the adapter. A

sufficient showing having been made, "it then rests upon . . . [non-movants] to specify at least some evidence which could be produced at trial." Lundeen v. Cordner, *supra,* 407.

Here no such showing has been made, either by Wetzel, who is not contesting the matter, or by Eaton. Eaton's response consists essentially of citing two California cases in which courts assertedly have indulged in broad inferences to avoid allowing defendants from escaping liability when they may well have been responsible for the torts in question. The Court finds both cases inapposite.

In Ybarra v. Spangard, 25 Cal.2d 486, 154 P.2d 687 (1944), aff'd after remand, 93 Cal.App.2d 43, 208 P.2d 445 (1949), *res ipsa loquitur* was applied against all doctors and hospital employees associated with an operation in which an unconscious patient underwent treatment for appendicitis and emerged suffering a traumatic injury to the shoulder. *Ybarra* is distinguishable from the case at bar on several grounds. The decision there rested heavily upon each of the defendants having equal right of control over the instrumentalities of the operation; therefore, each was called upon to meet an inference of negligence by explaining his conduct. No such control is present here on the part of FWG. Rather, the issue is whether it in fact was the party originally in control of the disputed adapter part. *Ybarra* also has been viewed as an extreme decision, justifiable perhaps on the ground of a special duty of safety imposed upon all those standing in the relationship of physician to the helpless patient. Prosser, Law of Torts § 42, p. 208 (2d ed. 1955). No such quasi-fiduciary position can be ascribed to FWG here.

Additionally, defendants in *Ybarra* apparently were unwilling or unable to explain who was in fact responsible for the maltreatment. Here, FWG has done all that is within reason in explaining its

role in the case, insisting through its president's affidavit that visual inspection is necessary and firmly denying its manufacture and/or sale of the part in question. Above all, *Ybarra* may be predicated on the unconscious patient's total inability to ascertain who caused his injury while on the operating table. This stark inaccessibility of evidence, appropriate for a *res ipsa* case such as *Ybarra*, is totally inapplicable to the instant action. While Wetzel could hardly be expected to have ready access to the necessary evidence, Eaton clearly could and should have within its own records, or that of its predecessor, the pertinent information. Not rendered helpless ás the plaintiff was in *Ybarra*, it is not entitled to any such inference.

Summers v. Tice, 33 Cal.2d 80, 199 P. 2d 1 (1948), also relied upon by Eaton, is vastly different than the case at bar. In *Summers*, joint and several liability was imposed upon two independently acting tortfeasors who caused indivisible harm to plaintiff. Since each of the defendant hunters was found to have acted negligently in firing a shotgun in plaintiff's direction, they, not the injured plaintiff, were left to apportion damages between themselves. *See also* Steuber v. Hastings Heating & Sheetmetal Company, *supra*, 807–808; Reader v. Ottis, 147 Minn. 335, 180 N.W. 117 (1920).

In *Summers*, negligence of both defendants was clearly established; only the alternative causation was in doubt. Here, however, only one of the two intermittent suppliers to Eaton's predecessor could have been at fault. It would be manifestly unjust and unreasonable to impose burdens on both of them merely because Eaton is unable to advance any evidence from which it could reasonably be inferred which one of them was responsible for the component part in question. Accordingly, FWG cannot be kept in this case by being treated, as was proper in *Summers*, as the potential equivalent of one of the two joint tortfeasors.

The Court is mindful of Williams v. Chick, in which the Eighth Circuit Court of Appeals cautioned against granting summary judgment in tort cases. 373 F.2d 330, 332 (1967). *Williams* advised courts that even when they believe that a directed verdict ultimately will have to be entered, they "should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment." *Id.*, 331, quoting Pierce v. Ford Motor Company, 190 F.2d 910, 915 (4th Cir. 1951).

As a general admonition, however, *Williams* does not bar the granting of summary judgment in proper circumstances. Hurley v. Northwest Publications, Inc., 273 F.Supp. 967, 974 (D. Minn.1967). *Williams* involved the issue whether death occurred as a direct and proximate cause of the negligence of defendant's truck driver. Being a question of foreseeability, it was of a kind that is traditionally suitable for determination by the trier of fact. Here, however, the question is simply one of who originally manufactured and/or sold the allegedly defective adapter. This is an issue whose resolution does not inherently partake of the collective wisdom of a jury.

More importantly, granting FWG's motion would not be an illustration of the Court seeking to evade a jury trial by weighing "evidence in advance of its being presented." Williams v. Chick, *supra*, 331. Simply put, there is no evidence now, or to be presented at trial, but the fact that both Precision and FWG intermittently supplied Char-Lynn, Eaton's predecessor. From this, a jury could not reasonably infer that FWG was responsible for the part in question.

Eaton admits that if the record remains as inconclusive as it is now, a directed verdict would have to be entered in favor of FWG should the case proceed to trial. But Eaton has not offered any evidence, in the form of affidavits or

otherwise, under Rule 56(e), setting forth specific facts showing that there is a genuine issue that could go to the jury, under the equivalent State-Federal test for sufficiency of evidence. The case against FWG is now at a position of equipoise and, as in Lundeen v. Cordner, *supra,* "(t)here is absolutely no showing that a trial would produce any different or additional evidence." 354 F.2d 401, 408.

· It is conceivable, to be sure, that there may be ways of raising reasonable inferences as to FWG's production and/or distribution of the controverted adapter part. This could be achieved by establishing a sequence of dates during which time FWG, or its predecessor, was the exclusive, or even predominant, supplier to Eaton's predecessor. Assuming such a chronology could be erected, correlating this period with the date of the installation of the steering unit on the tractor in question might allow Eaton to survive a directed verdict. Alternatively, relevant documentation might turn up should pretrial discovery shift in focus from Wetzel and Eaton to FWG.

■ But even this surmise is inadequate at this stage of the litigation to withstand entry of summary judgment. "A mere chance that somehow, somewhere, on cross examination or otherwise plaintiffs will uncover something which might add to their cases but obviously of which now they have no knowledge, is mere speculation and conjecture and is not sufficient . . ." to avert summary judgment. Hurley v. Northwest Publications, Inc., *supra,* 974.

Therefore, Williams v. Chick does not proscribe equating the standard for a directed verdict with that of summary judgment on the facts of this case. *See* Lundeen v. Cordner, *supra,* 407. In view of the inevitability of directing a verdict in FWG's favor and cognizant of the purpose of summary judgment being to "avoid useless trials," the Court believes that keeping FWG in

this action would result in "a useless waste of time and expense to the parties as well as a needless inconvenience to the Court." *Id.,* 409.

Accordingly, summary judgment must be granted for FWG against plaintiff Wetzel and cross-claimant Eaton.