**Delthea MASON, Plaintiff,**

v.

**SPIEGEL, INC., Defendant and Third-Party Plaintiff,**

v.

**ANDOVER TOGS, INC., a foreign corporation, Park Avenue Imports, Inc., an Illinois corporation, Park Avenue Overseas Corporation, a foreign corporation, Mitsui & Company USA, Inc., a New York corporation, and Ina Fashions, Inc., a foreign corporation, Third-Party Defendants.**

**Civ. No. 4–83–363.**

United States District Court, D. Minnesota, Fourth Division.

Feb. 1, 1985.

Frank W. Levin, Minneapolis, Minn., and Richard Baldwin, Webster & Baldwin, St. Paul, Minn., for plaintiff.

James T. Martin, Gislason and Martin, Edina, Minn., for defendant and third-party plaintiff.

Heidi M. Hoard, Faegre & Benson, Minneapolis, Minn., and Michael Ryan, Murnane, Conlin, White, Brandt & Hoffman, St. Paul, Minn., for third-party defendants.

DIANA E. MURPHY, District Judge.

Plaintiff, Delthea Mason, a Minnesota resident, brought this action for compensatory and punitive damages against defendant Spiegel, Inc. (Spiegel), an Illinois corporation, alleging strict liability, breach of warranties and negligence in the sale of an unreasonably flammable cotton gingham tennis dress. Jurisdiction is alleged under 28 U.S.C. § 1332. Spiegel brought a third-party complaint against Andover Togs, Inc. (Andover), Park Avenue Imports, Inc., a/k/a Park Avenue Overseas Corporation (collectively referred to as Park Avenue), Mitsui & Company (U.S.A.) (Mitsui), and Ina Fashions (Ina). Spiegel alleges that it bought the dress from one of the third-party defendants and resold it without modification, making one of these parties liable for contribution or indemnification. The matter is now before the court upon Spiegel's motion for dismissal, or, alternatively, for summary judgment, and third-party defendants Park Avenue and Mitsui's joint motion for summary judgment. Andover has also filed a motion for summary judgment.

BACKGROUND

There appears to be little dispute about the facts. In 1968, plaintiff was severely burned when her woven gingham checked tennis dress caught fire from a burning match. The accident occurred in North Carolina when plaintiff was five years old, and she was hospitalized there for several months. Plaintiff and her parents were residents of Minnesota when the accident occurred, but were living in North Carolina where plaintiff's father was serving in the army. The family returned to Minnesota in 1970 and have resided here ever since, apart from a four year stay in Georgia.

Plaintiff states that her parents did not know that they could have brought suit on her behalf during her minority. Before turning 21 on August 4, 1983, plaintiff contacted legal counsel. Suits were begun against Spiegel on May 5, 1983 in Minnesota, on June 7, 1983 in Illinois, and on June 9, 1983 in North Carolina. Plaintiff's counsel began suit in three jurisdictions because of uncertainty as to which was appropriate. It is undisputed that the North Carolina statute of limitations had not run when the suit was commenced.

In each suit, plaintiff claimed that the dress had been purchased from Spiegel in the spring of 1968 and that, among other things, it was unreasonably flammable, unmerchantable and unfit for its intended purpose. Plaintiff also charged that Spiegel failed to exercise ordinary care in placing the dress on the market. Plaintiff does not have any documents proving purchase, nor is any portion of the dress still in existence.

On February 9, 1984, an order was entered which dismissed the North Carolina case; the Illinois case had been previously dismissed on January 27, 1984. Plaintiff now contends that these dismissals were ordered because Spiegel chose to appear in Minnesota, claiming that it would be cheaper and more convenient to litigate in Minnesota, and appearing to concede that the North Carolina statute of limitations had not run. Spiegel claims that plaintiff's suit is barred by the Minnesota statute of limitations.

On March 1, 1984, Spiegel brought its suit for contribution or indemnity against the third-party defendants. It admits that it has no records from the period 1966 through 1968 which establish the identity of the manufacturer or supplier of the tennis dress. Spiegel relies on testimony of two persons formerly employed by Spiegel who have stated that to the best of their recollection, the garment would have been purchased from Andover, Park Avenue, or

Ina, but could not specify which of them was the actual manufacturer.

Ina went out of business 10 years ago and has not answered Spiegel's third-party complaint. Mitsui and Park Avenue claim that they have conducted an extensive search of their records and have found no evidence of a sale of the dress or any similar garment to Spiegel. Andover denies ever manufacturing, importing, or selling any such tennis dress at all.

DISCUSSION

*A. Spiegel's Motion for Dismissal and/or Summary Judgment* [1]

Spiegel contends that plaintiff's suit is not timely under the Minnesota statute of limitations. It argues that statutes of limitations are procedural rather than substantive and that the law of the forum governs with respect to procedural rules. Accordingly, Spiegel maintains that *N.C.Gen.Stat.* § 1–17, which tolls the running of the statute of limitations in personal injury suits until three years after the injured infant reaches the age of 18, is inapplicable. The appropriate period, it argues, is governed by *Minn.Stat.* §§ 541.05 and 541.15, which toll the running of the six year statute of limitations for personal injuries during infancy and grant one additional year in which to bring suit after the infant turns 18. Plaintiff turned 18 on August 4, 1981, but did not bring suit in Minnesota until May 5, 1983. Spiegel contends that her claim is therefore barred.

Plaintiff, by contrast, asserts that Spiegel waived its right to raise the statute of limitations by suggesting that the action proceed in Minnesota. She argues that it would be unconscionable to allow Spiegel to assert the statute of limitations defense after plaintiff has relied on its actions and allowed the timely North Carolina suit to be dismissed, rather than bringing a motion to transfer. In addition, plaintiff contends that the North Carolina statute regarding limitation periods for minors is substantive in nature and that application of Minnesota's five-factor choice-of-law analysis

dictates that North Carolina law apply. Under *N.C.Gen.Stat.* § 1–17, plaintiff's claims were not time-barred until August 4, 1983, three months *after* the Minnesota suit was filed.

Equitable estoppel can be invoked to prevent a party from taking unconscionable advantage of his or her actions. *Bethesda Lutheran Church v. Twin City Constr.*, 356 N.W.2d 344 (Minn.App.1984). To rely on this doctrine, plaintiff must show that defendant made representations or inducements upon which plaintiff reasonably relied that will cause plaintiff harm if estoppel is not found. *Northern Petrochemical Co. v. U.S. Fire Insurance Co.*, 277 N.W.2d 408, 410 (Minn.1979). Bad faith or an intent to deceive is generally not essential to create an estoppel against enforcement of limitation periods. 51 Am. Jur.2d *Limitation of Actions*, § 450. Nor is it necessary that there be an express mention of, or agreement about, the statute of limitations. *Albachten v. Bradley*, 212 Minn. 359, 3 N.W.2d 783 (1942). Whether the elements of equitable estoppel are present is a question of fact. *See O'Donnell v. Continental Casualty Co.*, 263 Minn. 326, 116 N.W.2d 680 (1962).

In the instant case, both sides are in essential agreement as to the facts underlying the estoppel claim. Plaintiff does not contend that counsel for Spiegel deliberately attempted to deceive or that there was an express agreement or promise that Spiegel would waive the statute of limitations. Rather, plaintiff claims that opposing counsel appeared by his actions to concede that the action was maintainable in Minnesota, and that transfer was an unnecessary ritual.

The evidence shows that after Spiegel failed to appear in North Carolina or Illinois, those courts urged plaintiff to proceed on a default basis or have its case dismissed. Plaintiff's counsel states that he thought it inappropriate to default Spiegel when they were actively litigating the

---

**1.** Since matters outside the pleadings have been submitted and considered, the court will treat

defendant's motion as one of summary judgment. *See* Fed.R.Civ.P. 12(b)(6).

claim in Minnesota and he informed Spiegel's counsel of the court's wishes. Spiegel's counsel suggested that the North Carolina and Illinois suits be dismissed because they were duplicative, an unnecessary expense, and because Minnesota was the most convenient forum for the suit.

Counsel for the defense also stated during a discussion of the North Carolina statute of limitations at a December 2, 1983 deposition of plaintiff, that plaintiff "sure is lucky this accident happened in North Carolina and not in Minnesota." At no time before plaintiff's twenty-first birthday did defense counsel state that the Minnesota, rather than the North Carolina, statute of limitation was controlling.

Plaintiff's counsel would not have dismissed the North Carolina and Illinois actions but for the actions of Spiegel's counsel in suggesting that suit be brought in Minnesota and in implying that North Carolina law controlled. This reliance clearly harms plaintiff. If estoppel is not found, plaintiff will presumably lose any chance of compensation for her severe injuries. Under these circumstances, the elements of equitable estoppel are satisfied. Because of this determination it is not necessary to reach plaintiff's other argument.[2]

### B. Third-Party Defendants' Motions for Summary Judgment

■ Park Avenue, Mitsui and Andover Togs claim that they are entitled to summary judgment against Spiegel because it cannot identify which third-party defendant sold it the tennis dress.[3] They argue that the sole basis for Spiegel's claims against the third-party defendants is the 18-year old recollection of a former merchandise manager and a former buyer of Spiegel who think that the dress could have come from one of three sources. Such evidence, they claim, is legally insufficient to support a cause of action against them and is not adequate to rebut a summary judgment motion. Each third-party defendant asserts that the "alternative liability" theory of Restatement (Second) of Torts, § 433B (1965) and the "market share" theory sometimes used in asbestos or drug cases are inapplicable. In addition, Mitsui and Park Avenue contend that their search through 175 boxes of records shows a matter of law that they did not sell the tennis dress to Spiegel.[4]

Spiegel, on the other hand, asserts that the plaintiff will rely on *Gryc v. Dayton-Hudson Corp.*, 297 N.W.2d 727 (Minn. 1980), *cert. denied*, 449 U.S. 921, 101 S.Ct. 320, 66 L.Ed.2d 149 (1980), to prove that

---

**2.** Nevertheless, the court is persuaded that the North Carolina statute at issue could be classified as substantive as applied to this particular plaintiff. The policies underlying the statute are substantive in nature, reflecting "a special concern of the North Carolina courts for protecting the interests of the infant." *Genesco, Inc. v. Cone Mills Corp.*, 604 F.2d 281 (4th Cir. 1979). Minnesota law is somewhat unclear concerning the method to distinguish between questions of substance and procedure for choice of law purposes. *Davis v. Furlong*, 328 N.W.2d 150 (Minn.1983), suggests, however, that Minnesota will be guided, at least partially, by North Carolina's characterization of its statute as substantive. If the North Carolina law is classified as substantive, the choice-of-law analysis of *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408 (Minn.1973) applies. Review of these factors indicates that the North Carolina statute of limitations should be applied in plaintiff's case instead of Minnesota law.

**3.** Each third-party defendant also claims that summary judgment is appropriate because the statute of limitations bars plaintiff's action

against Spiegel. Since the court has held that plaintiff's claim is not barred, summary judgment cannot be granted on this basis. Moreover, under Minnesota law, the statute of limitations does not begin to run on a right to claim contribution or indemnity until liability by the party claiming such right actually occurs. *See Grothe v. Shaffer*, 305 Minn. 17, 232 N.W.2d 227 (1975); 9A Dunnell Minn.Digest 2d *Indemnity* § 4340 (3d ed. rev. 1977). Accordingly, Spiegel's third-party complaint is timely.

**4.** Spiegel contends that Mitsui owned or controlled Park Avenue during the relevant time periods and that in 1975, Mitsui liquidated Park Avenue and assumed all of its liabilities and assets. Mitsui denies that either Park Avenue Imports, Inc. or Park Avenue Overseas Corp. was a subsidiary or that it has any legal liability for these liquidated companies. For purposes of this motion, the court accepts the allegations of Spiegel.

the tennis dress was defective because of an industry-wide failure to flame retard such dresses and because of an industry-wide practice of adhering to a federal test procedure which was invalid. In such circumstances, Spiegel contends that the theory of "alternative liability" is appropriate to shift the burden of proof from Spiegel to the third-party defendants who must show that they did not produce the garment in question.

After carefully considering the record before the court, the court finds that third-party defendants Mitsui and Park Avenue have established their right to judgment as a matter of law. The record shows that 175 boxes of documents were examined reflecting the business operations of Park Avenue for the years 1964 to 1975, the last year being the one in which Park Avenue was dissolved as an Illinois corporation. All documents pertaining to sales to Spiegel were examined, but none was found concerning style number 30Z9266, the tennis dress in question, or any similar "9000" series dress.

The record also indicates that the preserved documents are quite complete. Spiegel's witnesses testified in their depositions that various forms, specifications and invoices would necessarily document each sale. Park Avenue and Mitsui's search turned up each category of documents mentioned by the former Spiegel employees as well as other types of documents, such as customs invoices and inventory lists. Moreover, the search revealed that Park Avenue sold Spiegel a garment which was advertised in the same catalogue as plaintiff's tennis dress. Documents concerning this item, a girl's blouse, style number 30Z9413, show up repeatedly in Park Avenue's records, including Spiegel's merchandise purchase orders, shipping documents and correspondence.

Park Avenue has sifted through extensive records to show that it did not manufacture the dress in question. Because Spiegel has not in rebuttal demonstrated any specific facts which create a genuine issue as to whether Park Avenue sold it the dress, it has not met its burden under Fed.R.Civ.P. 56(e). *See Lundeen v. Cordner,* 354 F.2d 401 (8th Cir.1966). Summary judgment is therefore appropriate as to Park Avenue and Mitsui.

Third-party defendant Andover has no documents to prove that it did not manufacture the tennis dress for Spiegel.[5] As a matter of law, however, Spiegel has failed to present sufficient evidence to support a cause of action against Andover. The court is persuaded that the instant case resembles more closely *Wetzel v. Eaton Corp.,* 62 F.R.D. 22 (D.Minn.1973), than any of the authorities which apply an alternative liability theory.

In *Wetzel,* the plaintiff was injured in an accident caused by a faulty tractor part. The tractor part had been discarded and the only evidence as to the manufacturer of the component part was the tractor manufacturer's testimony that it purchased the part from one of two intermittent suppliers. The court held that the facts gave equal support to two inconsistent inferences and any verdict would necessarily be based on conjecture and speculation. *Wetzel,* 62 F.R.D. at 29.

In this case discovery has ended and Spiegel has not come up with any evidence more probative than the 18 year old testimony of its former employees. No piece of the tennis dress remains, and Spiegel has not kept documents which would help it prove the evidentiary chain. Like the *Wetzel* case, the testimony of Spiegel's employees establishes facts giving rise to inconsistent inferences, for they state that one of three companies could have made the dress. Liability in such a case could only be based on speculation. *See Clift v. Nelson,* 25 Wash.App. 607, 608 P.2d 647 (1980); *Garcia v. Joseph Vince Co.,* 84 Cal.App.3d 868, 148 Cal.Rptr. 843 (1978).

---

5. Andover does rely, however, on the testimony of its founder and current chairperson, Sidney B. Cohen, who asserts that in the 35 years of its existence, Andover has never manufactured, imported or sold a gingham checked tennis dress of the type allegedly worn by plaintiff. Cohen aff. at 2.

Spiegel argues that *Wetzel v. Eaton Corp.*, 62 F.R.D. 22 (D.Minn.1973), is inapplicable because section 433B of the Restatement of Torts 2d shifts the burden of proof to defendants to prove their innocence. Under the rule of *Erie Railroad Co. v. Tomkins*, however, this court is bound to follow the substantive law of Minnesota. The Minnesota Supreme Court has not yet adopted an alternative liability theory which would impose liability on the basis of an industry-wide practice.[6] Even if this court were persuaded that Minnesota intended to adopt such a doctrine, it finds, as a matter of law, that such a theory is inappropriate upon the facts of this case.[7]

### ORDER

Accordingly, based upon the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that

1. The motion of Spiegel, Inc. for dismissal or, alternatively, summary judgment is denied.

2. The joint motion of third-party defendants Park Avenue Imports, Inc., Park Avenue Overseas Corporation, and Mitsui & Company (U.S.A.) for summary judgment is granted.

3. The motion of third-party defendant Andover Togs, Inc. for summary judgment is granted.

6. *Gryc v. Dayton-Hudson Corp.*, 297 N.W.2d 727 (Minn.1980), *cert. denied,* 449 U.S. 921, 101 S.Ct. 320, 66 L.Ed.2d 149 (1980), did not involve an "industry-wide" theory of liability. In *Gryc,* the findings pertained to the actual fabric manufacturer and liability was based upon documents found in that manufacturer's file.

7. In the instant case, unlike the drug and asbestos cases, the tennis dress is not a uniform product that is intrinsically defective no matter who manufactured it. *Compare Sheffield v. Eli-Lilly & Co.,* 144 Cal.App.3d 583, 192 Cal.Rptr. 870 (1983). Even if these companies did make or supply a dress to Spiegel made from 100% cotton, variations in weight, fabric weave, finishing and other methods of construction would all affect the flammability of the garment. Nor is this a case involving a plaintiff who cannot identify any of several defendants who admittedly manufactured the specific product which caused the injury. *See* Annot. 22 A.L.R. 4th, 183 (1983). Plaintiff in this case has identified Spiegel as the seller of the dress and will have the

opportunity to receive compensation if she proves her case. Spiegel itself may have had a role in the manufacturer's alleged negligence, for the record demonstrates that it sometimes gave suppliers specifications for garments it would sell. *See* Ardickas depo. at 8; Stein depo. at 69. Moreover, several of these manufacturers specifically deny that they ever manufactured such a dress. *See Sindell v. Abbott Laboratories,* 26 Cal.3d 588, 163 Cal.Rptr. 132, 145, 607 P.2d 924, 937 (1978), *cert. denied,* 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140 (1980) (One of original DES defendant manufacturers was dismissed upon its filing a declaration that it had not manufactured DES until after plaintiff was born.) In such circumstances, it would be unreasonable to impose burdens on the third-party defendants when harm might have been caused by only one of them. *See Namm v. Charles Frosst & Co., Inc.,* 178 N.J.Super. 19, 427 A.2d 1121 (1981).