**Eugene DOLLANDER, Appellant,**

v.

**ROCHESTER STATE HOSPITAL, et al., Respondents.**

**No. CX–84–970.**

Court of Appeals of Minnesota.

Feb. 19, 1985.

William F. Messinger, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Steven Gunn, Sp. Asst. Atty. Gen., St. Paul, for respondents.

Heard, considered and decided by WOZ-NIAK, P.J., and PARKER and HUSPENI, JJ.

## OPINION

PARKER, Judge.

Appellant Eugene Dollander was laid off from his position as a group supervisor in the chemical dependency unit of Rochester State Hospital when the hospital was closed by the legislature. Information, some erroneous, was published in a series of bulletins, from which Dollander allegedly formed the belief that he was entitled to placement in any vacant position within the State hospital system for which he was qualified, ahead of any other State employees or applicants. In conformance with State collective bargaining agreements and personnel rules, Dollander was offered a job at the same level at another State hospital and given absolute preference over non-State applicants but not over other

State employees applying for vacant positions to which he was referred.

Dollander sought a temporary and permanent injunction directing the State to refrain from violating his rights under the closure statute and personnel rules. The trial court granted the State's summary judgment motion against him. We affirm.

## FACTS

Eugene Dollander was employed as a group supervisor in the chemical dependency unit of Rochester State Hospital. On June 1, 1981, the Minnesota legislature ordered the hospital closed.

The hospital closing statute (1981 Minn. Laws ch. 360, § 2, subd. 5) required the Commissioner of Employee Relations to "monitor the orderly reassignment of affected employees of the state hospital pursuant to authority vested in him by Minnesota Statutes, Section 246.60." Minn.Stat. § 246.60 (1982) provides:

> When institutions under the control of the commissioner of public welfare * * * are consolidated, the commissioner of employee relations and the commissioner of administration shall direct the department incorporating the consolidation * * to employ the affected employees at no loss in salary. The commissioner of employee relations shall temporarily suspend any rules or laws to accommodate these provisions. Any department or agency that employs an affected employee is authorized to temporarily exceed its approved complement. The commissioner of employee relations shall develop procedures to insure that moving expenses are reimbursed for those employees who relocate pursuant to the consolidation.

The filling of group supervisor and registered nurse positions in state government is governed at least in part by collective bargaining agreements and State personnel rules, and the policy adopted to cover the closing of Rochester State Hospital reflected those agreements and rules.

The Department of Public Welfare (now the Department of Human Services) provided Rochester State Hospital employees with a series of informational bulletins regarding their rights pursuant to the closure. The bulletins explained that laid-off employees were eligible for special severance pay which could be deferred for up to one year, with the understanding that their names would be placed on a transfer list. At least one of the bulletins said that employees from the transfer list must be hired if they were interested in the position. A memorandum from the personnel director of the Department of Public Welfare stated that preference would be given to people on the transfer list interested in a vacancy before any other list was used to fill the vacancy. This information was erroneous.

Before his layoff, the State offered Dollander a group supervisor position at no change in salary in the chemical dependency unit at Fergus Falls State Hospital. If Dollander had accepted the position at Fergus Falls, that institution would have exceeded its approved complement of employees. In making the job offer, the State "temporarily suspended" existing State regulations relating to certified lists of eligibles. Dollander rejected the Fergus Falls offer.

On July 28, 1981, Dollander received a layoff letter. The letter advised him that he would be placed on the Rochester State Hospital layoff list for his classification. This entitled Dollander to be certified to any group supervisor vacancies at Rochester State Hospital ahead of any applicants not on the layoff list.

The letter also offered Dollander the option of placement on a reemployment list for all positions in classes of interest to him for which he was qualified that were either equivalent to or lower than his former position. Dollander qualified for group supervisor and registered nurse positions. This entitled Dollander to automatic referral whenever a vacancy occurred in any of the listed classes in geographic areas for which he stated an interest.

The letter further stated that Dollander could defer his special severance payment for up to one year if he did not sign the waiver of transfer rights and if he remained available for transfer to another State institution. The layoff letter did not state that laid-off employees who deferred their severance payments had priority over all other current State employees applying for State jobs, nor did it say that employees with transfer status must be hired if they expressed an interest in a vacant position. Dollander elected to defer his special severance pay.

During the following year Dollander was referred to a number of different job vacancies, and he was interviewed for several positions. However, to date, Dollander has not been hired for any position in state government. In conformance with State collective bargaining agreements and personnel rules, Dollander was not given absolute preference over other State employees applying for vacant positions.

Dollander filed suit in district court, contending that he was entitled to placement in any vacant group supervisor or registered nurse positions within the State hospital system ahead of any other State employees or applicants. The district court denied Dollander's motion for summary judgment and granted the State's motion, concluding:

1. By offering Dollander a group supervisor position at no loss in salary at Fergus Falls State Hospital, the State fulfilled its obligation under the Rochester State Hospital closure law, 1981 Minn.Laws ch. 360 and Minn.Stat. § 246.-60 (1982).

2. By placing Dollander on the Rochester State Hospital group supervisor layoff list and on a number of reemployment lists, the State discharged its obligations under the Minnesota Personnel Rules then in effect.

3. References to an absolute hiring preference in newsletters and other State documents cannot override the rights of other State employees to be considered for vacant State job positions under State personnel regulations and collective bargaining agreements.

4. There has been no showing that Dollander relied on the newsletters or departmental memoranda.

## ISSUE

Did the trial court err in concluding that the State fulfilled its obligations to Dollander under applicable statutes and personnel rules and that informational documents provided by the State did not alter Dollander's rights as specified in his layoff letter?

## DISCUSSION

### Scope of Review

■ Summary judgment may be granted if "there is no genuine issue as to any material fact." Minn.R.Civ.P. 56.03. The nonmoving party has the benefit of that view of the evidence which is most favorable to him and is entitled to have all doubts and factual inferences resolved against the moving party. See Nord v. Herreid, 305 N.W.2d 337, 339 (Minn.1981). Summary judgment is a "blunt instrument" and "should be employed only where it is perfectly clear that no issue of fact is involved." Donnay v. Boulware, 275 Minn. 37, 45, 144 N.W.2d 711, 716 (1966). However, it does serve a "salutary purpose of avoiding useless and time consuming trials." Jewson v. Mayo Clinic, 691 F.2d 405, 408 (8th Cir.1982).

■ When reviewing the district court's entry of summary judgment, this court applies the same standard to determine (1) whether there are any genuine issues of material fact, and (2) whether the trial court erred in its application of the law. Betlach v. Wayzata Condominium, 281 N.W.2d 328, 330 (Minn.1979).

Dollander's primary argument is that certain newsletters and bulletins provided him by the State gave him an absolute hiring preference over other State employees competing for State jobs, contrary to personnel rules and collective bargaining agreements. He contends that those communications constituted an offer which he

accepted by forgoing his severance pay and by stating his willingness to accept future State employment, creating an enforceable employment contract.

Dollander was advised in his layoff letter what his rights were. Having been so apprised, he cannot reasonably rely on other communications to establish an employment contract with contrary terms. Moreover, no reliance on the other communications has been shown.

Dollander also asserts that the legislature intended laid-off Rochester State Hospital employees to be employed at other State hospitals or agencies and that the State did not live up to its obligation. In interpreting the legislature's intention in this matter, we accord deference to the agency's judgment, given the complexity of the area of public employee administration. *See, e.g., Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 824 (Minn.1977).

The State interpreted the statute as requiring one absolute offer to laid-off employees regardless of the approved complement of the department offering the position. Employees who accepted the position received compensation for moving expenses. Employees who chose not to accept the offer and to defer receipt of special severance pay received preference over non-State applicants whenever appropriate vacancies occurred.

We note that the State is not Dollander's adversary in this case. In fact, the State's position is analogous to that of a stakeholder between Dollander in the assertion of his rights and the rights of other State employees who might be competing with him for a job. Viewed in this light, the State's interpretation seems to us to be a reasonable harmonization of the closure statute with personnel rules and collective bargaining contract provisions.

Dollander notes that the contract covering group supervisors did not go into effect until November 18, 1981, nearly four months after he deferred his special severance pay. He argues that any union contract entered into after his deferral is irrel-

evant to his rights. Even if the union contract was not in effect at the time Dollander made his election, the State was not free to give him an absolute preference. The State was bound by personnel rules which governed the rights of other State employees in the absence of a collective bargaining contract.

The State argues that the hospital closure law, Minn.Stat. § 246.60, and Minnesota personnel rules do not provide Dollander a cause of action in district court. Rather, the personnel rules contemplated use of the grievance procedure set forth in 2 MCAR § 2.177 as an exclusive remedy. In fact, Dollander followed the grievance procedure and presented his case to the Commissioner. The State contends that the Commissioner's decision denying Dollander's claim was "final," and thus he had no right to appeal to district court. There does appear to be serious doubt whether Dollander had a cause of action in district court. In view of our decision on the foregoing issue, however, it is unnecessary to address this question.

## DECISION

We affirm the trial court's grant of summary judgment to the State. This case raises no issues of material fact, and the trial court did not err in its application of the law.

Affirmed.