Duane BIXLER, by his father and natural guardian, Herbert D. BIXLER, and Herbert D. Bixler, individually, Appellant,

v.

AVONDALE MILLS, Cone Mills Corporation, Riegel Textile Corporation, Cohn-Hall-Marx, a division of United Merchants and Manufacturers, Inc., et al., Respondents.

No. C9–86–2049.

Court of Appeals of Minnesota.

May 5, 1987.

Review Dismissed June 30, 1987.

Richard Baldwin, Webster & Baldwin, P.A., St. Paul, for appellant.

Donald M. Jardine, Thomas M. Countryman, Jardine, Logan & O'Brien, St. Paul, for Avondale Mills.

Heidi M. Hoard, Faegre & Benson, Mpls, for Cone Mills Corp.

James S. Simonson, David M. Coyne, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, for Riegel Textile Corp.

Gene P. Bradt, Hansen, Dordell, Bradt, Odlaug & Bradt, St. Paul, for Cohn-Hall-Marx, a div. of United Merchants and Mfrs., Inc., et al.

Heard, considered and decided by NIERENGARTEN, P.J., and PARKER and FOLEY, JJ.

## OPINION

PARKER, Judge.

Appellant Duane Bixler was severely burned in 1969 when his homemade cotton flannelette night shirt ignited, and he received settlements from the retailer and from one textile mill that may have manufactured the fabric. This appeal is from the trial court's grant of summary judgment in favor of four other textile mills named as possible manufacturers of the fabric. We affirm.

## FACTS

The complete procedural history of this case is set forth in *Bixler by Bixler v. J.C. Penney Co., Inc.,* 376 N.W.2d 209 (Minn. 1985). To summarize, Duane Bixler, then five years old, was severely burned in 1969 when his homemade cotton flannelette nightshirt ignited. Eleven years later he filed suit against the retailer, J.C. Penney, alleging products liability, breach of warranties and negligence. J.C. Penney named five fabric mills as possible suppliers: M. Lowenstein Corporation, Avondale Mills, Cone Mills Corporation, Riegel Textile Corporation, and Cohn-Hall-Marx, a division of United Merchants and Manufacturers, Inc. J.C. Penney impleaded M. Lowenstein Corporation. Bixler ultimately settled with J.C. Penney and Lowenstein, granting them *Pierringer*-type releases. The remaining four textile mills are the respondents in this appeal.

In 1982, prior to the settlements, Bixler moved to amend his complaint to add the other four mills and to add a count in market-share liability.[1] The trial court denied the motion and Bixler appealed to the Minnesota Supreme Court. In the meantime, he served the other four mills separately, alleging products liability, breach of warranties and negligence. A second trial court granted summary judgment to the four mills, and Bixler appealed from that ruling. The consolidated appeal was heard in *Bixler*. The supreme court dismissed the appeal from the first order, ruling, in part, that consideration of the issue of market-share liability was premature. The court reversed the summary judgment and remanded for further discovery.

Bixler then conducted further discovery in order to identify the mill which had sold the subject fabric to J.C. Penney. Armed with a swatch of the cowboy-patterned 100 percent cotton flannelette that had ignited explosively, he attempted to find the same pattern in the fabric libraries of each of the defendant mills, but could not do so. He also deposed key employees of each of the mills, all of whom denied making the sub-

---

1. Market-share liability was first recognized as a theory for use in diethylstilbestrol (DES) litigation because of plaintiffs' inability to identify the manufacturer of the particular product their mothers had taken years before. *See Sindell v. Abbott Laboratories,* 26 Cal.3d 588, 607 P.2d 924, 163 Cal.Rptr. 132, *cert. denied,* 449 U.S. 912, 101 S.Ct. 286, 66 L.E.2d 140 (1980). It required that the plaintiff join the manufacturers of a "substantial share of the DES which her mother might have taken," with each manufacturer "held liable for the portion of the judgment represented by its share of the market." *Id.* at 612, 607 P.2d at 937, 163 Cal.Rptr. at 145; *see also* Trippler, *Market Share, Concert of Action, Enterprise and Alternative Liabilities—Challenging the Traditional Requirement of Identifying the Wrongdoer,* in Potpourri of Products Liability Law, Section VIII (Minnesota Institute of Legal Education, January 1986).

ject fabric, two on the basis of its construction as well as its pattern.

Avondale Mills asserted that it did not sell over-the-counter flannelette to J.C. Penney in the 1960s and that J.C. Penney bought only 27–inch diaper cloth from Avondale at that time. Cone Mills Corporation distinguished its cotton flannelette on the basis of the number of warp threads per inch and spacing between the warp threads. Riegel Textile Corporation distinguished its cotton flannelette on the basis of the number of warp threads per inch and the construction of the selvage, or edge. Cohn-Hall-Marx testified that it could not locate the pattern books in 1986, but had examined them in 1982 and could not find the cowboy pattern. Bixler attempted to contradict certain of this deposition testimony with an affidavit from his own expert witness.

The defendants again moved for summary judgment. In response, Bixler's attorney admitted in an affidavit that he could not find the cowboy pattern at any of the mills. He asked the court to shift the burden of proof to the defendants under the theory of alternative liability or *res ipsa loquitur* (he has abandoned the latter theory).

The trial court granted summary judgment for defendants, reasoning that the doctrine of alternative liability was not applicable when (1) the plaintiff has not named as defendants all persons who might have caused the harm; and (2) not all defendants acted negligently, because only one of them manufactured and marketed defectively flammable fabric. The court concluded that the burden of proof was on Bixler and that he had not sustained it.

On appeal Bixler does not dispute that summary judgment was proper under the traditional allocation of the burden of proof. He argues only that the theory of alternative liability should be adopted to shift the burden of proof to the defendants.

## ISSUE

Did the trial court properly grant summary judgment to respondents?

## DISCUSSION

On appeal from summary judgment, it is this court's function to determine whether there are any genuine issues of material fact for trial and whether the trial court erred in its application of the law. *Dollander v. Rochester State Hospital,* 362 N.W.2d 386, 389 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. May 20, 1985).

The theory of alternative liability has not been adopted in Minnesota. Assuming *arguendo* that it would be proper for this court to initiate such a radical change in tort analysis, the question of whether it should be applied depends on the satisfaction of several requirements.

The theory was first announced in *Summers v. Tice,* 33 Cal.2d 80, 199 P.2d 1 (1948), and is now embodied in the Restatement of Torts:

> Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.

*Restatement (Second) of Torts,* § 433B(3) (1965).

The Michigan Supreme Court adopted the theory, applying it to DES cases in *Abel v. Eli Lilly and Co.,* 418 Mich. 311, 343 N.W.2d 164, *cert. denied, sub. nom. E.R. Squibb & Sons, Inc. v. Abel,* 469 U.S. 833, 105 S.Ct. 123, 83 L.Ed.2d 65 (1984). The court listed several requirements that must be met in order for the theory to apply:

> First, it must be shown that all the defendants have acted tortiously * * *; second, that the plaintiffs have been harmed by the conduct of one of the defendants (in order to support this second requirement, the plaintiffs must bring before the court all the actors who may have caused the injury in fact); third, that the plaintiffs, through no fault of their own, are unable to identify which actor caused the injury.

*Id.* at 331–32, 343 N.W.2d at 173.

Applying these standards to the present case, we agree with the trial court that this

is not a proper case for application of the theory of alternative liability.

First, Bixler admitted at oral argument that there was no evidence in the trial court record that the manufacture of untreated 100 percent cotton flannelette is a tortious act. We recognize, as did the supreme court, that cotton flannelette is not "entirely fungible with similar products on the market." *Bixler*, 376 N.W.2d at 214 n. 1. The evidence clearly shows that the fabrics made by two of the respondents vary in construction, which would affect flammability. *See Mason v. Spiegel, Inc.*, 610 F.Supp. 401, 406 n. 7 (1985) ("Even if these companies did make or supply a dress to Spiegel made from 100% cotton, variations in weight, fabric weave, finishing and other methods of construction would all affect the flammability of the garment.")

Second, we are not convinced that all of J.C. Penney's cotton flannelette suppliers were necessarily before the court. Bixler cites J.C. Penney's answer to the interrogatory of M. Lowenstein, dated November 3, 1981, which stated, "to the best of the present knowledge" of J.C. Penney, it bought cotton flannelette in 1968 from Lowenstein and the respondents and named no others. Later, however, J.C. Penney buyer Thomas Keating gave the following deposition testimony:

Q: Mr. Keating, who were the textile mills that you dealt with in 1966, 1967 and 1968 to purchase cotton flannel such as Howes Exhibit No. 2?

A: Lowenstein would be one. Cone Mills, Reigel Textiles, Avondale, * * * they would be some of the bigger ones.

Q: United Merchandise Manufacturers?

A: Yes.

We find this later testimony to be equivocal at best, leading us to agree with the trial court that all the possible manufacturers may not have been named as defendants.

Third, Bixler has identified a tortfeasor in J.C. Penney Company, the retailer of the flannelette, and has obtained a settlement. Bixler objects that this settlement should not be considered because J.C. Penney was given a *Pierringer*-type release. We recognize that *Pierringer* releases do not extinguish potential claims against remaining alleged tortfeasors. *Bixler*, 376 N.W.2d at 215. But Bixler is asking, not that remaining claims be recognized as viable, but that the burden of proof be shifted. Because this involves very different policy concerns, this court is not compelled to ignore the J.C. Penney settlement.

We cannot say that appellant's inability to identify the remaining tortfeasors is "through no fault of [his] own." *Abel*, 343 N.W.2d at 173. As the *Abel* court stated:

[P]laintiffs must make a genuine attempt to locate and identify the tortfeasor responsible for the individual injury. The genuineness of the attempt to do so is to be measured by the traditional due diligence standard, and it is the trial court's duty to ascertain whether a duly diligent effort on the part of a plaintiff has been made.

*Id.* We recognize that appellant was not unreasonably dilatory in conducting the necessary discovery under the traditional allocation of the burden of proof. *Bixler*, 376 N.W.2d at 217. However, the supreme court did not decide the diligence question as it relates to adoption of a theory which shifts the burden of proof, because it held that consideration of such a theory (there, market-share liability) was premature. *Id.* at 214. The question of diligence in this context is no longer premature. As we now consider the question, it is apparent that the 11–year delay between the accident and suit exacerbated the difficulty of discovering the manufacturer of the fabric.

This case is distinguishable from the DES cases such as *Abel*, where the injury is not discoverable until many years later, thus creating genuine problems of discovery entirely outside the plaintiff's control. Here, had discovery been instituted earlier, Bixler would have been more likely to have been able to identify his tortfeasor through J.C. Penney's records, as well as through a search of up-to-date pattern libraries of the textile mills.

Bixler's action was not time-barred, but that does not fully answer the question of due diligence when this court is asked to shift the burden of proof to the respon-

dents. Even if the other prerequisites to alternative liability were met, we would be reluctant to shift the burden of proof when the appellant's difficulty in discovery is compounded by his own delay.

 We agree with the trial court that this is not a proper case for adoption of the theory of alternative liability and that the burden of proof remained with Bixler. The supreme court remanded for additional discovery with the expectation that Bixler would have a reasonable likelihood of discovering the manufacturer. With commendable effort, he has attempted to discover the manufacturer and has been unable to do so. Unequivocal deposition testimony was produced by each of the four respondents that it was not the manufacturer of the fabric. On the state of the present record, that testimony is not contradicted. The trial court properly granted summary judgment.

### DECISION

Affirmed.